IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| PURPLE INNOVATION, LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>WAYKAR, INC., a Florida corporation, AMERICAN SERLEEP INC., a Washington corporation, SHENZHEN KAYSNO TECHNOLOGY CO., LTD., a Chinese limited company, JIANQIANG HUANG, an individual, XIAOQIN HUANG, an individual, LILI HUANG, an individual, and JUNWEN ZHENG, an individual,<br><br>    Defendants. | JURY TRIAL DEMANDED<br><br><br>Case No.: 25-cv-266 |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, PURPLE INNOVATION, LLC ("Plaintiff" or "Purple"), through its undersigned attorneys, for its Complaint against Defendants, WAYKAR, INC., AMERICAN SERLEEP INC., SHENZHEN KAYSNO TECHNOLOGY CO., LTD, JIANQIANG HUANG, XIAOQIN HUANG, LILI HUANG, and JUNWEN ZHENG (collectively, "Defendants"), and alleges:

## NATURE OF THE ACTION

1.    This is an action for trademark infringement, false designation of

origin, and unfair competition under the Trademark Act, 15 U.S.C. §§ 1051, *et seq.*, as amended (the "Lanham Act"), and related claims under the statutory and common law of the State of Florida, all arising from the Defendants' unauthorized use of Purple's Asserted Marks (as defined and detailed below) in connection with the importation, manufacture, distribution, marketing, advertising, promotion, offering for sale and sale of Defendants' competing mattress products.

2.    All such conduct was done blatantly and deliberately intending to trade on the goodwill, distinction, and reputation of Plaintiff's brand, cause confusion and deception, and divert sales of Plaintiff's products to the Defendants.

3.    Plaintiff seeks entry of a permanent injunction and an award of Defendants' profits, actual damages, and other related relief.

## THE PARTIES

4.    Plaintiff Purple Innovation, LLC, is a Delaware limited liability company with its principal place of business at 4100 N. Chapel Ridge Rd., Suite 200, Lehi, Utah 84043.  Plaintiff is the exclusive owner of the Purple® brand with a mission to help improve lives through innovative comfort solutions.  A variety of innovative, premium-branded comfort products, including mattresses, pillows, bedding, frames and more, are offered under Plaintiff's Purple® brand.  Its products are the result of decades of innovation and investment in proprietary and patented comfort technologies made with proprietary manufacturing processes.

2

5.      Defendant Waykar, Inc. is a Florida corporation. Waykar's current registered agent office is 7901 4th Street N., Suite 300, St. Petersburg, Florida 33702. Upon information and belief, Waykar is a driving force behind and active participant in the unlawful and infringing conduct described herein.

6.      Defendant American Serleep Inc. is a Washington corporation. American Serleep's current registered agent office is 100 N Howard Street, Suite R, Spokane, Washington 99201. Upon information and belief, American Serleep is a driving force behind and active participant in the unlawful and infringing conduct described herein.

7.      Shenzhen Kaysno Technology Co., Ltd. is a China limited company, with an address of Rm1702, 17F, Block A, Jindingsheng Tech Innovation Park, Qinghu Cmty, Longhua St Longhua, Shenzhen, China 518000. Upon information and belief, Shenzhen Kaysno Technology is the owner of Waykar and American Serleep and a driving force behind and active participant in the unlawful and infringing conduct described herein.

8.      Defendant Jianqiang Huang is an individual, and upon information and belief, residing in Washington or California. He is the founder, CEO, Vice President, and CFO of Defendant Waykar. He is also identified with the Washington Secretary of State as the Governor of American Serleep. Upon information and belief, Jianqiang Huang is a driving force behind and active

participant in the unlawful and infringing conduct described herein.

9. Defendant Xiaoqin Huang is an individual, and upon information and belief, has residences in Tallahassee, Florida, and Kentucky. Xiaoqin Huang is the registrant of U.S. Reg. No. 6308597 for the "Sersper" name. Upon information and belief, Xiaoqin Huang is a driving force behind and active participant in the unlawful and infringing conduct described herein.

10. Defendant Lili Huang is an individual, and upon information and belief, residing in China. Lili Huang is the registrant of U.S. Reg. No. 6220739 for the "Serweet" name. Upon information and belief, Lili Huang is a driving force behind and active participant in the unlawful and infringing conduct described herein.

11. Defendant Junwen Zheng is an individual residing in California. Junwen Zheng is the registrant of U.S. Reg. No. 6143677 for the "Kescas" name. In 2022, Junwen Zheng formed Defendant American Serleep and held the title of CEO for American Serleep. Upon information and belief, Junwen Zheng is a driving force behind and active participant in the unlawful and infringing conduct described herein.

12. As alleged herein, Waykar, in concert with the other Defendants, have launched a scheme to profit through their infringement of Plaintiff's well-known Purple® trademarks and trade dress, launching competing mattress

products (as further described below, the "Infringing Products") marked with identical and/or confusingly similar purple colored product labels, tags, packaging, and trade dress (as further described below, the "Infringing Marks").

13.     Defendants are importing, and offering for sale and selling the Infringing Products through multiple channels, including through various e-commerce websites, and under various trade names (as further described below, the "Defendants' Trade Names").

14.     Individually and collectively, Defendants' infringing acts have caused, and are likely to cause confusion, mistake, and deception among consumers as to the source or origin of the Defendants' Infringing Products and have deceived, and are likely to continue to deceive, the consuming public into believing, mistakenly, that they originate from, are associated or affiliated with, or are otherwise authorized by Plaintiff.

15.     Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court.

## JURISDICTION AND VENUE

16.     Plaintiff's claims are predicated upon the Lanham Act of 1946, as amended, 15 U.S.C. § 1051, *et seq.*, and related claims under the statutory and common law of the State of Florida.

17.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a) and 1338(b), and has supplemental jurisdiction over Plaintiff's state and common law claims under 28 U.S.C. § 1367(a).

18.     Defendant Waykar, Inc. is incorporated in Florida, with a registered office in St. Petersburg, Florida, and subject to personal jurisdiction in this district regarding this action. Each of the other Defendants are subject to personal jurisdiction because, upon information and belief, each of the Defendants have committed, and continue to commit, acts of infringement in this district.

19.      Venue is proper under 28 U.S.C. § 1391 because Defendants have committed acts of infringement in this district.

## GENERAL ALLEGATIONS

### Plaintiff's Purple® Trademarks and Trade Dress

20.     Since as early as 2015, Plaintiff began developing itself as an innovation leader in the field of sleep and furniture.

21.     Plaintiff quickly increased its distribution and, in January 2016, launched an online store, becoming one of the first "bed in a box" companies to sell mattresses and other bed accessories directly to consumers exclusively via its online store.

22.     In addition to its online store, Plaintiff now has over fifty-five company-owned retail stores at locations across the United States, including

within Florida and this district, and its products are sold in over three thousand retail stores nationwide through its wholesale customers.

23.    Plaintiff designs, manufactures, and sells, domestically and internationally, innovative and technologically advanced comfort products, including mattress, pillows, seat cushions, beds, bedding, bases, and related products, through direct-to-consumer online channels, traditional retail partners, third-party online retailers and Purple® branded retail showrooms.  Purple is well known for these products, including its original Purple® mattress.

24.    With its products, Plaintiff has continuously used, for almost a decade, and is the exclusive owner and holder of both valid and subsisting federal statutory rights and common law rights to the Purple® trademarks and trade dress, including substantial goodwill therefor.

25.    Plaintiff is the owner of the following U.S. Trademark Registrations, for the Purple® trademarks:

| U.S. Reg. No. | Reg. Date | Trademark |
|---|---|---|
| 5005282 | July 19, 2016 | Purple® |
| 5659866 | Jan. 22, 2019 | Purple® |
| 5661556 | Jan. 22, 2019 | Purple® |
| 5906647 | Nov. 12, 2019 | Purple® |
| 5906645 | Nov. 12, 2019 | Purple® |
| 6083965 | June 23, 2020 | Purple® |
| 6551053 | Nov. 09, 2021 | Purple® |
| 5661555 | Jan. 22, 2019 | **purple**® |
| 5659565 | Jan. 22, 2019 | **purple**® |

| U.S. Reg. No. | Reg. Date | Trademark |
|---|---|---|
| 5906646 | Nov. 12, 2019 | **purple**® |
| 5906644 | Nov. 12, 2019 | **purple**® |
| 7316235 | Feb. 27, 2024 | **purple**® |
| 6075633 | June 09, 2020 | The Purple Powerbase® |
| 6147600 | Sept. 08, 2020 | The Purple Mattress® |
| 6147602 | Sept. 08, 2020 | Purple Hybrid Premier® |
| 6147601 | Sept. 08, 2020 | Purple Hybrid® |
| 6152374 | Sept. 15, 2020 | Purple Pay® |
| 6240543 | Jan. 05, 2021 | Purple Grid® |
| 6393089 | June 22, 2021 | Purple Duvet® |
| 6393088 | June 22, 2021 | Purple Sheets® |
| 6393109 | June 22, 2021 | Purple Plush® |
| 6393108 | June 22, 2021 | Purple Plush Pillow® |
| 6393128 | June 22, 2021 | Purple Platform Bed Frame® |
| 6393127 | June 22, 2021 | Purple Foundation® |
| 6393107 | June 22, 2021 | Purple Pillow® |
| 6393110 | June 22, 2021 | Purple Mattress Protector® |
| 6423325 | July 20, 2021 | Purple Powerbase® |
| 6603673 | Dec. 28, 2021 | Purple Plus® |
| 6890513 | Nov. 01, 2022 | Purple Cloud® |
| 6890512 | Nov. 01, 2022 | Purple Twincloud® |
| 7108425 | July 11, 2023 | Purple Ascent® |
| 7443361 | July 09, 2024 | Purple Luxe® |
| 7488994 | Aug. 27, 2024 | Sleep Purple, Live Better. ® |
| 7497354 | Sept. 03, 2024 | PurpleRenew® |
| 7492965 | Sept. 03, 2024 | Purple Mattress® |
| 7503961 | Sept. 10, 2024 | Sleep Better. Live Purple. ® |
| 7579963 | Nov. 26, 2024 | Purple Premier® |
| 7627393 | Dec. 24, 2024 | Purple Gelflex Grid® |

26.    All such registrations are valid and subsisting, in full force and effect.  Attached as **Composite Exhibit 1** are the registration certificates for Reg. Nos. 5659866, 5661556, 5906647, 5906645, 6083965, 6551053, 5661555, 5659565,

5906646, 5906644, 7316235, 6075633, 6147600, 6147602, 6147601, 6152374, 6240543, 6393089, 6393088, 6393109, 6393108, 6393128, 6393127, 6393107, 6393110, 6423325, 6603673, 6890513, 6890512, 7108425, 7443361, 7488994, 7497354, 7492965, 7503961, 7579963, and 7627393 on the Principal Register, and for Reg. No. 5005282 on the Supplemental Register.

27.     Plaintiff is also the owner of U.S. Trademark Application Nos. 90658760 for PURPLE INFINITE, 98395811 for PURPLEFLEX, 98182049 for LIVE BETTER. LIVE PURPLE., 90623651 for PURPLE HARMINI, 99025337 for , 99025098 for , 99025158 for , and 99025405 for , each pending registration on the Principal Register.

28.     Plaintiff has continuously used the Purple® trademarks stylized in the color purple as shown below:



29.     Plaintiff has exclusively and continuously used the color purple applied to its distinctive product labels, tags and packaging for mattresses and

mattress related products, as shown below (collectively, all such word marks and designs, the "Trademarks").



30.     Plaintiff has exclusively and continuously applied the color purple, including as shown below, to mattresses and related products (the "Trade Dress"; together with the Trademarks, the "Asserted Marks").



31.     Plaintiff is the owner of the following U.S. Trademark Registrations

for the Asserted Marks:

| U.S. Reg. No. | Reg. Date | Trademark |
|---|---|---|
| 5352289 | Dec. 5, 2017 | |
| 6971734 | Feb. 7, 2023 | |
| 6971733 | Feb. 7, 2023 | |
| 6971732 | Feb. 7, 2023 | |

32.     Such registrations are valid and subsisting, in full force and effect.

Attached as **Composite Exhibit 2** are the registration certificates for Reg. Nos.

6971734, 6971733, and 6971732 on the Principal Register, and for Reg. No. 5352289

on the Supplemental Register.

33.    Further images of Plaintiff's Asserted Marks, adopted as early as 2015, 2018 and 2023, respectively, are shown below:



34.    Plaintiff is the owner of U.S. Trademark Application Nos. 98505110, 98505014, and 97931659, for the Trademarks and Trade Dress shown in paragraph 33, for registration on the Principal Register.

35.    The Asserted Marks as used on mattresses serves no purpose or function other than to identify Plaintiff as the source of the goods.

36.    Plaintiff's color purple in Plaintiff's distinctive design marks,

product labels, tags, and packaging, and its Trade Dress, have all become synonymous with Plaintiff and the Trademarks, and has acquired strong secondary meaning within the minds of the relevant consuming public.

37.     Plaintiff's Asserted Marks have been consistently and prominently used on the mattresses and related products themselves and on labels, tags, packaging, in sales materials, and in consumer advertising for Plaintiff's mattresses and related products, including in the ones displayed below.  Examples of marketplace uses are attached as **Composite Exhibit 3**.





38.     Plaintiff is the owner, by virtue of its continuous and exclusive use for almost a decade, of common law rights in and to each of the Asserted Marks.

39.     Plaintiff's Asserted Marks give Plaintiff a competitive advantage and have become, through widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of Plaintiff, its high-quality goods, and its goodwill.

40.     In advertising and packaging its products, Plaintiff uses the Asserted Marks to readily identify goods offered exclusively by Plaintiff and to let the consumer easily identify Plaintiff as the source of its products.

41.     Because of Plaintiff's exclusive and extensive use of the Asserted Marks with Plaintiff's mattresses, the Asserted Marks have come to be uniquely associated with and are distinctive for Plaintiff, its brand, and its products.

42.     Plaintiff's website, at www.purple.com, on which Plaintiff's branded products are marketed and offered for sale, continuously and consistently uses the Asserted Marks.

43.     Plaintiff's social media pages on Facebook, Instagram and Twitter, on which Plaintiff's branded products are marketed, have also continuously and consistently used the Asserted Marks.

44.     Plaintiff's focus on innovation, research and development investment have resulted in widespread recognition in the sleep and comfort industry. For example, J.D. Power ranked Plaintiff #1 in customer satisfaction, comfort and support for the bed-in-a-box category in 2019.

45.     Plaintiff's Asserted Marks and the products offered thereunder have received significant unsolicited coverage in various forms of media and outlets.

46.     As a result of its widespread, continuous, and exclusive use of the Asserted Marks to identify its products and Plaintiff as their source, Plaintiff owns and holds not only valid and subsisting federal registrations described above, but also exclusive common law rights and substantial goodwill in the Asserted Marks.

47.     Plaintiff has expended substantial time, money, and other resources in developing, marketing, advertising, and otherwise promoting its brand, including the Asserted Marks and the products sold thereunder.

48.     The products are offered and sold under the Asserted Marks, by

Plaintiff, through various means and modes throughout the United States and the world, including at retail, wholesale, in over 3,000 top specialty stores, and on the Internet, including Plaintiff's website at www.purple.com.

49.     As a result of Plaintiff's extensive advertising and efforts, the Asserted Marks are widely and favorably known, across the United States and internationally to the trade and purchasing public, to exclusively identify the sole source of the products offered by Plaintiff, to signify the high quality of the products designated by the Asserted Marks, and to have acquired incalculable distinction, reputation, and goodwill value belonging exclusively to Plaintiff.

50.     Plaintiff scrupulously and successfully enforced and protected its rights herein under Plaintiff's Asserted Marks against past infringement to protect the valuable rights and excellent reputation Plaintiff has worked so hard to achieve and to prevent public confusion.

## **DEFENDANTS' UNLAWFUL ACTIVITIES**

51.     In and around 2019 or 2020, learning of the selling power and value of the goodwill, distinction and reputation that Plaintiff has created in the Purple® brand over the years, Defendants Jianqiang Huang, Xiaoqin Huang, Lili Huang, and Junwen Zheng devised a scheme and launched an infringement campaign.

52.     The campaign focused on targeting Plaintiff for the purpose of blatantly and deliberately confusing and diverting customers from Plaintiff's

products to Defendants' products to harm Plaintiff and its brand, and to profit unfairly from Plaintiff's brand and goodwill.

53.    As driving forces behind the plan for the improper and infringing conduct, Defendants Xiaoqin Huang, Lili Huang, and Junwen Zheng, and Shenzhen Kaysno Technology Co., Ltd., filed U.S. trademark applications for Defendants' Trade Names, listing, for each, addresses in China.  Copies of the prosecution histories for these four registrations are attached as **Exhibits 4 through 7.**

| Reg. No. | Mark | Claimed First Use Anywhere / Use in Commerce | Owner |
|---|---|---|---|
| 6308597 | SERSPER | May 26, 2020 / June 07, 2020 | Xiaoqin Huang |
| 6220739 | SERWEET | Mar. 29, 2020 / Mar. 30, 2020 | Lili Huang |
| 6143677 | KESCAS | Dec. 22, 2019 / Jan. 03, 2020 | Junwen Zheng |
| 6947688 | SERLEEP | Nov. 03, 2021 / Nov. 03, 2021 | Shenzhen Kaysno Technology Co., Ltd. |

54.    In addition, around 2021, Defendants each played and continue to play a substantial and critical role in the formation of a multi-layer corporate scheme for an unlawful purpose and to further their infringing activities.

55.    In June 2021, Defendant Jianqiang Huang formed Defendant Waykar, Inc., under the laws of Florida.

56.    Defendant Waykar began marketing and selling home appliances and indoor and outdoor furniture products as described on these websites, www.linkedin.com/in/waykar-chad/, www.waykarhome.com and www.waykar.com.   Copies of these websites are attached as **Exhibit 8** and **Composite Exhibit 9.**

57.    Waykar's appliances and furniture products are offered through a variety of online retailers and marketplaces.

58.    In April 2022, Defendant Junwen Zheng filed and signed the formation documents, under the title Governor, to incorporate another entity, Defendant American Serleep, Inc., but this time under the laws of Washington.

59.    Defendant Jianqiang Huang was appointed Governor of American Serleep in a filing with the Washington Secretary of State in August 2022.

60.    Despite the formation of the new entity American Serleep, as shown on Exhibit 8, Defendant Jianqiang Huang self-describes Waykar's furniture sales as being operated under a "division" within Waykar.

61.    In execution of the scheme to profit through infringement of Plaintiff's brands, Defendants adopted and began to use the Infringing Marks and working in concert with each other, began importing and selling the Infringing Products through multiple channels, including through various e-commerce websites, and under the Defendants' names and various Trade Names.

62.     Defendants offer the Infringing Products on the e-commerce page on eBay.com under the name Waykar, as set forth below, and in the attached **Composite Exhibit 10**.



63.     As shown on Exhibit 8, as the founder of Waykar, Defendant Jianqiang Huang has been "[l]eading Waykar Inc. since its inception."

64.     Defendants also offer and sell the Infringing Products through the American Serleep company's website at www.serleep.com, as set forth below, and in the attached **Exhibit 11.**



65.     Defendants also offer and sell Infringing Products on the "Sersper Store" on Amazon.com and Sersper website at www.sersper.com.  Excerpts of these advertisements are shown below and attached as **Composite Exhibit 12.**





66.      Defendants further offer and sell Infringing Products on online marketplaces like Target and Kohl.  These websites identify "Waykar Inc." as the "seller" and "shipper" of the Infringing Products.  Excerpts of these advertisements are shown below and are attached as **Composite Exhibit 13** and **Exhibit 14**.



67. Defendants also offer for sale and sell the Infringing Products under the "Serweet" name on the marketplace at www.walmart.com as shown below, and in the attached **Exhibit 15.**



68.    Defendants are also offering for sale and selling the Infringing Products under the Kescas name on www.wayfair.com as set forth below, and in the attached **Composite Exhibit 16.**



69.    Defendants are each playing a substantial and critical role and are each acting in concert to infringe on Plaintiff's Trade Dress and usurp the goodwill and reputation associated with Plaintiff and its brands.

70.    The corporate Defendants are alter egos and/or mere instrumentalities of the individual Defendants, created for an improper purpose to further the infringing activities, and as a deliberate tactic to conceal each Defendant's illegal conduct to intentionally and willfully profit from the infringement of Plaintiff's brand and goodwill.

71.     Upon learning of Defendants' adoption and use of the Infringing Marks to draw attention and traffic to Defendants' mattress products being offered through various online channels, Plaintiff submitted a number of take down requests, many of which were successful in removing the Infringing Products from the marketplace.

72.     Despite the successful take down submissions, Defendants continued and expanded their infringement activities, evidencing their disregard for Plaintiff's trademark rights in violation of federal and state law.

73.     Individually and collectively, Defendants' infringing acts have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendants' Infringing Products and have and are likely to deceive the relevant consuming public into believing, mistakenly, that they originate from, are associated or affiliated with, or are otherwise authorized by Plaintiff.

74.     Defendants' acts are willful and intended to trade on the goodwill, distinction and reputation of Plaintiff's Asserted Marks, to cause confusion and deception, and to divert potential sales of Plaintiff's products to the Defendants.

75.     Defendants' acts are causing, and unless restrained, will continue to cause damage and irreparable harm to Plaintiff and to its valuable hard-earned reputation, distinction and goodwill with the consuming public for which Plaintiff

has no adequate remedy at law.

76.    As a result of Defendants' infringing activities and unfair competition, individually and collectively, Plaintiff has been damaged.

77.    Plaintiff has retained the undersigned counsel and is obligated to pay a reasonable fee in connection with this action.

## COUNT I
## Federal Trademark Infringement against All Defendants

78.    Plaintiff adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1-77 as if set forth in this paragraph.

79.    Plaintiff is the sole and exclusive owner of the federally-registered Asserted Marks and the common law rights therein.

80.    Plaintiff's Asserted Marks, as used by Plaintiff in connection with its goods, are inherently distinctive and/or have acquired secondary meaning.

81.    Defendants have used and are continuing to use the Infringing Marks to provide the same or substantially similar goods as those offered by Plaintiff.

82.    Defendants' activities complained of herein have been without Plaintiff's consent.

83.    Defendants' unauthorized use in commerce of the Infringing Products is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' products, and is likely to cause consumers to believe,

contrary to fact, that Defendants' products are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are affiliated with or sponsored by Plaintiff. Defendants' conduct constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

84.    Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the Asserted Marks and with the willful intent to cause confusion and trade on Plaintiff's goodwill and reputation.

85.    Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

86.    Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, a disgorgement of Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT II
## Federal False Designation of Origin and Unfair Competition against All Defendants

87.    Plaintiff adopts, repeats and realleges every allegation previously set forth in paragraphs 1-77 as if set forth in this paragraph.

88.    Defendants' unauthorized use in commerce of the Infringing Products is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' products, and is likely to cause consumers to believe, contrary to fact, that Defendants' products are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are affiliated with or sponsored by Plaintiff.

89.    Defendants' unauthorized use in commerce of the Infringing Products constitutes use of a false designation of origin and misleading description and representation of fact.

90.    Upon information and belief, Defendants' conduct is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff.

91.    Defendants' conduct is unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

92.    Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court, for which Plaintiff has no adequate remedy at law.

93.    Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, disgorgement of Defendants' profits, enhanced

damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT III
### Common Law Trademark Infringement and Unfair Competition against All Defendants

94.     Plaintiff adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1-77 as if set forth in this paragraph.

95.     Defendants' conduct constitutes trademark infringement and unfair competition in violation of the common law of the State of Florida.

96.     This conduct by Defendants have allowed Defendants to wrongfully profit from, and has injured, Plaintiff in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

97.     Defendants' actions permit recovery of a disgorgement of Defendants' profits, damages, and costs by Plaintiff, including treble damages and Plaintiff's attorneys' fees.

98.     Defendants' conduct is malicious and wanton and Plaintiff is entitled to an award of punitive damages under Florida law.

## COUNT IV
## Florida's Deceptive and Unfair Trade Practices Act against All Defendants

99.    Plaintiff adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1-77 as if set forth in this paragraph.

100.    Defendants have been misleading consumers and are causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of their goods, and are otherwise damaging the public.

101.    Defendants' conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of the Florida Deceptive and Unfair Trade Practices Act, § 501.201 *et seq.*, Fla. Stat. (2024).

102.    Defendants' conduct has caused and is likely to continue to cause substantial injury to the public and to Plaintiff, entitling Plaintiff to injunctive relief and to recover damages, its costs and its reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Purple Innovation, LLC, prays this Court enter judgment against Defendants Waykar, Inc., American Serleep Inc., Shenzhen Kaysno Technology Co., Ltd., Jianqiang Huang, Xiaoqin Huang, Lili Huang, and Junwen Zheng, and in favor of Plaintiff:

1.    Finding that Defendants' activities complained of herein are unlawful under Federal and Florida law;

2.    Granting an injunction permanently enjoining the Defendants, their

employees, agents, officers, directors, managers, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities, from:

a.    importing, manufacturing, distributing, supplying, providing, selling, marketing, advertising, promoting, or authorizing any third party to import, manufacture, distribute, supply, provide, sell, market, advertise or promote products bearing the Infringing Marks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Asserted Marks;

b.    engaging in any activity that infringes Plaintiff's rights in its Asserted Marks;

c.    engaging in any activity constituting unfair competition with Plaintiff;

d.    making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendants' goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or;

(ii) Plaintiff's goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendants;

e.    using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

f.    registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the Plaintiff's Asserted Marks, or any other mark that infringes or is likely to be confused with Plaintiff's Asserted Marks, or any goods of Plaintiff, or Plaintiff as their source; and

g.    aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (f).

3.    Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, supplied,

licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's goods.

4. Directing Defendants to instruct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States to immediately remove any products, packaging, labels, catalogs, containers, advertisements, signs, displays, and other materials that feature or bear the Infringing Marks, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Asserted Marks from public access and view.

5. Directing the Defendants to recall and deliver up for destruction or other disposition all goods, packaging, shopping bags, containers, advertisements, promotions, signs, displays, and related materials incorporating or bearing the Infringing Marks, or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of Plaintiff's Asserted Marks.

6. Directing Defendants, under Section 34(a) of the Lanham Act (15

U.S.C. § 1116(a)), to file with the court and serve upon Plaintiff's counsel within thirty (30) days after service on Defendants of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied therewith.

7.  Awarding Plaintiff an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

8.  Directing Defendants to account to and pay over to Plaintiff all profits realized by their wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

9.  Awarding Plaintiff punitive and exemplary damages as the Court finds appropriate to deter any future willful infringement.

10. Declaring this is an exceptional case under Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

11. Awarding Plaintiff actual damages and any profits of Defendants attributable to the infringement.

12.   Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

13.   Awarding such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


Dated:  February 3, 2025                    Respectfully submitted,

                                            **SHUTTS & BOWEN LLP**

                                            */s/ Patricia M. Flanagan*
                                            Patricia M. Flanagan
                                            Florida Bar No. 58592
                                            525 Okeechobee Boulevard
                                            Suite 1100
                                            West Palm Beach, Florida 33401

                                            Jodi-Ann Tillman
                                            Florida Bar No. 1022214
                                            201 East Las Olas Blvd.
                                            Suite 2200
                                            Fort Lauderdale, Florida 33301

                                            Camila Chediak
                                            Florida Bar No. 1039625
                                            200 South Biscayne Boulevard
                                            Suite 4100
                                            Miami, Florida 33131

                                            *Counsel for Plaintiff*
                                            *Purple Innovation, LLC*

WPBDOCS 21469278 6