## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PURPLE INNOVATION, LLC,

      Plaintiff,

v.                               Case No.: 8:25-cv-00266-CEH-SPF

WAYKAR, INC., AMERICAN
SERLEEP INC., SHENZHEN
KAYSNO TECHNOLOGY CO.,
LTD., JIANQIANG HUANG,
XIAOQIN HUANG, LILI HUANG,
and JUNWEN ZHENG,

      Defendants.

_____

## <u>ORDER</u>

This matter comes before the Court on the following motions: Defendants American Serleep Inc. and Waykar Inc.'s Motion to Dismiss, Transfer, or Stay (Doc. 22); the same Defendants' Motion to Stay (Doc. 39); and Defendants Jianqiang Huang and Xiaoqin Huang's Motion to Dismiss (Doc. 25). Plaintiff Purple Innovation LLC ("Purple") has responded in opposition to all three motions (Docs. 29, 34, 40).

In this trademark action, Purple alleges that seven Defendants engaged in a scheme to infringe Purple's trademark rights through the sale of products on various online marketplaces. Defendants Waykar and American Serleep request that this action be dismissed or transferred to the District of South Carolina based upon the first-filed rule, the forum non conveniens doctrine, and improper venue. Waykar and

American Serleep also seek to stay this action until the resolution of an appeal in a related action and until all Defendants have been served. Defendants Jianqiang and Xiaoqin Huang argue that they have not been properly served, that this Court lacks personal jurisdiction over them, and that the Complaint fails to state a claim against them.

Upon review and full consideration, and being duly advised in the premises, the Court will dismiss the Complaint without prejudice for improper venue, and dismiss the claims against Jianqiang and Xiaoqin Huang without prejudice for insufficient service of process and lack of personal jurisdiction. However, the Court will permit Purple to engage in jurisdictional discovery with Waykar and American Serleep for a limited period with regard to the issues of venue and personal jurisdiction. Purple may then, if it chooses, file an Amended Complaint in this Court. In light of these conclusions, the Court will deny the Motion to Stay.

## I.    BACKGROUND[1]

### A. The Instant Complaint

Plaintiff Purple Innovation LLC is a manufacturer and designer of mattresses and related products. Doc. 1 ¶ 4. Purple owns a number of registered trademarks and trademark applications in variations of its name. *Id.* ¶¶ 24-38. Purple has consistently

---

[1] When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court derives the statement of facts from the factual allegations of the pleadings, which the Court must accept as true in ruling on the motion, and any documents attached to the pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

applied the color purple to its marks as well as its product labels, packaging, and designs. *Id.* ¶¶ 28-29.

Purple alleges that Defendants are infringing Purple's protected marks by offering for sale on various online marketplaces, including Amazon, eBay, Target, and Walmart, mattresses with a distinctive purple design. *Id.* ¶¶ 62-68. The mattresses are sold under product lines named "Sersper," "Serweet, and "Kescas." *Id.* ¶¶ 65, 67, 68. Some of the marketplaces identify Defendant Waykar as the product seller. *Id.* ¶¶ 62, 66. Waykar is a Florida corporation that Defendant Jianqiang Huang founded. *Id.* ¶ 55; *see also id.* ¶ 63. The products Purple alleges infringe its marks are also sold directly by the website of Defendant American Serleep. *Id.* ¶ 64. American Serleep is a Washington corporation founded by Defendant Junwen Zheng. *Id.* ¶ 59. Zheng and the three remaining Defendants—Xiaoqin Huang, Lili Huang, and Shenzhen Kaysno Technology Co., Ltd., a Chinese company—registered the following U.S. trademarks, respectively: Kescas, Sersper, Serweet, and Serleep. *Id.* ¶ 53.

Purple alleges that the individual Defendants "devised a scheme and launched an infringement campaign" against Purple through the sale of the infringing products. *Id.* ¶ 51. According to Purple, the corporate Defendants are "alter egos and/or mere instrumentalities of the individual Defendants, created for an improper purpose to further the infringing activities, and as a deliberate tactic to conceal each Defendant's illegal conduct to intentionally and willfully profit from the infringement of Plaintiff's brand and goodwill." *Id.* ¶ 70. Although Purple has made successful requests to

remove infringing products from some of the online marketplaces, it alleges that Defendants' infringement activities have continued and expanded. *Id.* ¶¶ 71-72.

Accordingly, Purple alleges that all Defendants have committed federal trademark infringement, federal false designation of origin and unfair competition, common law trademark infringement and unfair competition, and violations of Florida's Deceptive and Unfair Trade Practices Act. *Id.* ¶¶ 78-102. Purple seeks injunctive and monetary relief.

Purple initiated this action on February 3, 2025, and filed a return of service indicating it effected service on American Serleep and Waykar on February 4, 2025.

### B. The South Carolina Action[2]

On January 13, 2025, about two weeks before Purple filed the Complaint, American Serleep filed an action against Purple and its parent company, Purple Innovation, Inc., in the District of South Carolina. American Serleep effected service on both Purple entities on February 10, 2025.

In the South Carolina action, American Serleep sought a declaratory judgment that its products do not infringe Purple's rights under two trademark registration numbers. Doc. 22-1. The action arose because Purple had made an allegation to Home Depot that the American Serleep mattresses Home Depot sold infringed Purple's

---

[2] The Court takes judicial notice of the public docket and filings from *American Serleep Inc. v. Purple Innovation Inc. et al.*, No. 2:25-cv-248 (D. S.C.). *See, e.g.*, Fed. R. Evid. 201(b) (court may take judicial notice of public records that are "not subject to reasonable dispute"); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278-80 (11th Cir. 1999) (court may take judicial notice of public records on a motion to dismiss without converting the motion to a motion for summary judgment).

trademark rights under those registration numbers; Home Depot notified American Serleep of this allegation. *Id.*

On April 29, 2025, the District of South Carolina dismissed American Serleep's action without prejudice for lack of personal jurisdiction. Doc. 38-1. The Purple entities are incorporated in Delaware and maintain their principal place of business in Utah; they do not maintain any agents or offices in South Carolina or own property there. *Id.* The court found that the nationwide advertising and availability of their products was not enough to constitute purposeful availment in South Carolina for the purpose of haling Purple into court there. *Id.* Although American Serleep is based in South Carolina, Purple's enforcement action in sending a letter to Home Depot regarding American Serleep was not directed toward South Carolina residents or otherwise connected to the forum. *Id.* American Serleep has filed a notice of appeal.

## II.    MOTION TO DISMISS OR TRANSFER (Doc. 22)

### A. <u>The Parties' Arguments</u>

In February 2025, before the South Carolina action was dismissed, Defendants American Serleep and Waykar filed a motion to dismiss, transfer, or stay the instant action pursuant to the first-filed complaint rule. Doc. 22. Alerting the Court to the South Carolina action, Defendants argue that the two cases involve substantially the same parties, identical factual allegations, and overlapping legal claims. *Id.* at 1-2. Because the South Carolina action was filed first, the South Carolina court was the

first to gain jurisdiction over the parties' dispute; therefore, Defendants ask this Court to transfer the instant case to the District of South Carolina. *Id.* at 6-10.

In the alternative, Defendants ask the Court to dismiss the action for improper venue under Fed. R. Civ. P. 12(b)(3) or to exercise the Court's discretion to transfer it to the District of South Carolina under 28 U.S.C. § 1404(a). *Id.* at 10-14. Defendants point out that the complaint contains no specific allegations regarding Florida; they also argue that South Carolina is the more appropriate forum because it is Defendants' home state and it is where the other action is pending. *Id.* "[A]t a minimum," Defendants ask the Court to stay this action pending resolution of the South Carolina case to avoid conflicting rulings. *Id.* at 14.

Responding in opposition, Purple argues that the first-filed rule does not apply because the South Carolina court lacks personal jurisdiction over Purple. Doc. 29 at 12. In contrast, Defendants do not object to personal jurisdiction in the Middle District of Florida. *Id.* at 13. Purple also contends that there is no substantial overlap between the two cases, where the instant action alleges an intentional scheme between seven defendants beginning in 2019 across jurisdictions, while the other case is a trademark dispute regarding a single product listing. *Id.* at 13-14. Further, Purple argues that venue is proper in Florida and a discretionary transfer is unwarranted given that South Carolina lacks personal jurisdiction over Purple. *Id.* at 15-18. Purple also opposes a stay. *Id.* at 18-19.

B. <u>Discussion</u>

1. **First-Filed Action and Discretionary Transfer**

Since the time of the parties' briefing, the District of South Carolina dismissed the South Carolina action for lack of personal jurisdiction over Purple. *See* Doc. 38-1. Accordingly, because there is no longer a pending action in the District of South Carolina, Defendants' request to transfer this action under the first-filed rule is due to be denied, without prejudice, as moot. For the same reason, Defendants' alternative request to stay the action pending resolution of the South Carolina case is denied as moot.[3]

Likewise, Defendants' request to transfer the action to the District of South Carolina under 28 U.S.C. § 1404(a) is due to be denied, without prejudice, as moot. Section 1404(a) permits a district court to transfer a civil action to "any other district or division where it might have been brought[,]" "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In determining whether transfer under § 1404(a) is warranted, courts consider factors such as:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

---

[3] The Court addresses Defendants' separate motion to stay this action (Doc. 39) in Section IV, *infra*.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citation omitted).

Here, Defendants' discretionary transfer request is almost entirely predicated on the pendency of the other action. *See* Doc. 22 at 12-14. Moreover, the District of South Carolina has determined that it lacks personal jurisdiction over Purple. Accordingly, although this Court makes no determination as to whether the District of South Carolina is a court where this action "might have been brought," 28 U.S.C. § 1404(a), it finds that transferring the action to the District of South Carolina is not in the interest of justice at this time.

### 2. Improper Venue

However, the motion is due to be granted to the extent it argues that venue is improper in the Middle District of Florida. Under 28 U.S.C. § 1391(b), a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391.

District courts in this circuit, and the majority of circuit courts in other circuits, place the burden on the plaintiff to prove that venue is proper. *See*, *e.g.*, *Waste Pro USA, Inc. v. Adams Sanitation Holding Co., LLC*, No. 6:21-cv-1521, 2022 WL 19842681, *2

(M.D. Fla. July 18, 2022), citing *Wai v. Rainbow Holdings*, 315 F.Supp.2d 1261, 1268 (S.D. Fla. 2004); *see also Tobien v. Nationwide Ins. Co.*, 133 F.4th 613, 618 (6th Cir. 2025) (collecting cases).

When venue is improper, the district court must dismiss the action or transfer it to any district or division in which it could have been brought, if the transfer is in the interest of justice. 28 U.S.C. § 1406(a).

Here, the Complaint alleges that venue is proper in the Middle District of Florida "because Defendants have committed acts of infringement in this district." Doc. 1 ¶ 19. It does not specify on which subsection of § 1391(b) Plaintiff relies. Defendants argue that none of the three apply. Defendants primarily challenge any argument that "a substantial part of the events or omissions giving rise to the claim" occurred in the Middle District of Florida. Doc. 22 at 11, citing 28 U.S.C. § 1391(b)(2). They point out, correctly, that the Complaint "has no specific allegations linking the moving Defendants to Florida." *Id.* Indeed, the Complaint does not identify any district or state to which Defendants sell the allegedly infringing products. *See* Doc. 1. Rather, it alleges only that *Purple* sells its products nationwide, including "within Florida and this district[.]" *Id.* ¶ 22. Purple does not substantively respond to Defendants' argument that venue is improper, devoting its efforts to forum non conveniens instead. *See* Doc. 29.

In a trademark infringement case, the "focus" of the venue inquiry under 28 U.S.C. § 1391(b)(2) is "the location where the unauthorized passing off takes place— whether that occurs solely within one district or in many." *Cottman Transmission*

*Systems, Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994); *see also Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (same); *Maid to Perfection Global, Inc. v. Miller*, No. 6:18-cv-463, 2018 WL 8244570, *4-5 (M.D. Fla. Aug. 22, 2018) (citing *Cottman*; finding the defendant's alleged use of an infringing mark for her cleaning business in North Dakota did not establish that venue was proper in Florida, even though she had obtained the infringing materials in Florida). "[T]he weight of authority holds that trademark infringement and unfair competition occur not where the plaintiff suffers an injury but rather where the defendant sells an allegedly infringing product." *Blue Water Int'l, Inc. v. Hattrick's Irish Sports Pub, LLC*, No. 8:17-cv-1584, 2017 WL 4182405, *5 (M.D. Fla. Sept. 21, 2017) (Merryday, J.) (citing *Cottman* and *Woodke*).[4]

The "passing off" in a trademark case that *Cottman* and *Woodke* referred to occurs in the place "where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's," rather than the place "where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages." *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956). Therefore, "[t]o determine where a substantial part of the events occurred, courts look for a location where a deceived customer buys a defendant's product in the belief that he is buying

_____

[4] Although the Eleventh Circuit has not directly ruled on the propriety of venue in a trademark action, it arguably endorsed the *Woodke* court's "passing off" test in *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-72 (11th Cir. 2003). The *Jenkins* court stated that it "approve[d] of" the Eighth Circuit's analysis, highlighting that the *Woodke* court "considered as relevant only those acts and omissions that have a close nexus to the wrong," and concluded that, because the trademark statute protects defendants, Congress "'meant to require courts to focus on relevant activities of the defendant, not of the plaintiff.'" *Id.*, quoting *Woodke*, 70 F.3d at 985.

the plaintiff's." *Organic Mattresses, Inc. v. Environmental Resource Outlet, Inc.*, No. 17-21905-Civ, 2017 WL 5665354, *12 (S.D. Fla. Oct. 6, 2017) (citing *Cottman* and *Woodke*), *report and recommendation adopted*, 2017 WL 5665356 (Oct. 24, 2017).

In *Hopjacks, Inc. v. Rock Solid Restaurants, LLC*, No. 6:17-cv-2210, 2018 WL 3635111, *4 (M.D. Fla. May 11, 2018), for example, the court found that venue was improper in the Middle District of Florida where "Plaintiff fail[ed] to demonstrate that any customers in this District mistakenly purchased Defendants' products in the belief that they were purchasing Plaintiff's…[or] even a single instance of customer confusion occurring in this District." On the contrary, the defendants had presented evidence that not one of the allegedly infringing products was shipped to Florida. *Id.* In contrast, venue was proper in *George & Co. LLC v. Spin Master Corp.*, No. 2:18-cv-154, 2018 WL 5268754, *12 (M.D. Fla. Sept. 13, 2018), where the plaintiff provided "ample evidence" of actual sales of allegedly infringing goods sold in the district. *See also*, *e.g.*, *TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, No. 13-cv-23066, 2014 WL 11899285, *5 (S.D. Fla. July 15, 2014) (venue was proper where defendants' own declarations established that a substantial part of the revenue from their nationwide business derived from sales of infringing products to Florida residents, and that they sold more products to Florida residents than residents of any other state).

Here, the Complaint alleges that Defendants passed off their goods as Purple's on a variety of online marketplaces, but it lacks any allegations whatsoever regarding the location of the consumers who were deceived by the alleged infringement. Accordingly, the Court cannot determine where the "passing off" occurred. Purple's

11

allegation about the location of its own sales is irrelevant to this inquiry. *See Jenkins*, 321 F.3d at 1371-72, citing *Woodke*, 70 F.3d at 985.  Accordingly, the Complaint does not establish that venue is proper under 28 U.S.C. § 1391(b)(2).

Venue is also not proper under § 1391(b)(1), because not all Defendants reside in Florida.  The Complaint alleges that Waykar is incorporated in Florida, and that Defendant Xiaoqin Huang has a residence in Tallahassee, Florida. Doc. 1 ¶¶ 5, 9. However, American Serleep is a Washington corporation, and Jianqiang Huang and Junwen Zheng allegedly reside in Washington and California. *Id.* ¶¶ 6, 8, 11.  Absent allegations that these defendants reside in Florida, Purple cannot satisfy the requirements of § 1391(b)(1).[5]

Finally, Purple also has not established that venue is proper under § 1391(b)(3), because, on the current record, it is not clear that no district exists where the action might have been brought.

In sum, the allegations in the Complaint do not establish that venue is proper in the Middle District of Florida under any subsection of § 1391.  Nor has Purple provided additional evidence to meet its burden of proof. *See Wai*, 315 F.Supp.2d at 1268 (when ruling on a motion for improper venue, the court may consider matters outside the pleadings).

---

[5] Defendants Shenzhen Kaysno Technology Co. and Lili Huang reside in China. Doc. 1 ¶¶ 7, 10.  A defendant who is not a resident of the United States may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

Under 28 U.S.C. § 1406(a), whether to dismiss or transfer an action for improper venue is reserved to the discretion of the district court. Defendants urge the Court to transfer the action to the District of South Carolina. However, as discussed in Section II(B)(1), *supra*, the dismissal of the related matter in that court counsels against transfer there. Moreover, it is possible that additional evidence and allegations will demonstrate that venue is proper in the Middle District of Florida or some other district under § 1391(b)(2). The Court will therefore dismiss the Complaint without prejudice for improper venue, and will permit Purple to engage in limited jurisdictional discovery, as set forth in Section IV, *infra*.

## III.    DEFENDANTS JIANQIANG HUANG & XIAOQIN HUANG'S MOTION TO DISMISS (Doc. 25)

Despite the conclusion that the Complaint is due to be dismissed for improper venue, the Court will also address the arguments of individual Defendants Jianqiang Huang and Xiaoqin Huang that the claims against them are due to be dismissed for insufficient service of process and lack of personal jurisdiction. Addressing both arguments at this time will promote the interests of judicial economy and may aid Purple in determining an appropriate venue for this action.

### A. <u>Service of Process</u>

Jianqiang and Xiaoqin Huang first contend that Purple failed to properly serve them. Doc. 25 at 2-5. The summons and complaint were served on an address in Riverside, California, where Defendants deny residing. *Id.* at 3-4. Defendants provide declarations stating that they reside in China and have never lived or stayed at the

Riverside address, which is leased by Waykar for employee housing. *Id.*; Docs. 25-2,

25-3. Moreover, the individual who received the documents at the Riverside address,

Johnsoon Cai, was an employee of a different company, rather than a co-resident or

an authorized agent, and he denies indicating that he would accept service on the

Huangs' behalf. Doc. 25-1; Doc. 25 at 4. Because service was improper, Defendants

argue, the Court also lacks personal jurisdiction over them. *Id.* at 4-5.

Purple responds that a motion to dismiss for improper service is premature

because the time for service had not yet expired at the time of their motion or Purple's

response. Doc. 34 at 12-13. Second, Purple contends that the returns of service are

regular on their face, shifting the burden to Defendants, and Defendants have failed to

present clear and convincing evidence that service was not proper. *Id.* at 13. Purple

argues that Defendants were served at Waykar's employee housing with Cai, a person

residing there, who told the process server that he was a "co-occupant" with the

Huangs. *Id.* at 14-17. In the alternative, Purple argues that Cai is an agent for the

Huangs because he is an employee of Waykar residing in its employee housing. *Id.*

Purple also asserts that the Court must resolve any factual conflicts between the

declarations and the returns of service in Purple's favor. *Id.* at 17-18.

Under Fed. R. Civ. P. 12(b)(5), a party may move to dismiss for insufficient

service of process. First, as a threshold matter, the Court finds that the service of

process issue is ripe for review. Purple argues that Defendants' motion is premature

because the time for service of process had not yet expired by the time of Defendants'

motion. Some courts have held that a motion challenging service is premature until

the plaintiff's time to effect service has expired. *See*, *e.g.*, *Laltitude, LLC v. Freshetech, LLC*, No. 6:21-cv-1879, 2022 WL 14636889, *4 (M.D. Fla. Oct. 24, 2022). Rule 4(m) provides that an action is subject to dismissal without prejudice if a defendant is not served within 90 days after the complaint is filed. Here, the Complaint was filed on February 3, 2025. Doc. 1. Defendants' motion, dated March 13, 2025, was filed before the Rule 4(m) deadline had expired. Doc. 25. By now, however, the Rule 4(m) deadline has long since passed. The Court therefore finds that the issue is ripe for review.

A process server's return that is typical on its face establishes a prima facie case of proper service. *See*, *e.g.*, *Empyrean Medical Svcs., Inc. v. Iluz*, No. 22-cv-81561, 2023 WL 4014833, *1 (S.D. Fla. May 8, 2023) (citations omitted); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1353 (4th ed. 2025). The burden of proof then shifts to the defendant to provide evidence of the alleged defects in service. *Id.*; *Hollander v. Wolf*, No. 09-80587-CIV, 2009 WL 3336012, *3 (S.D. Fla. Oct. 14, 2009). The plaintiff may then submit counter-affidavits or other evidence to establish the sufficiency of service. *Id.*

Fed. R. Civ. P. 4(e) sets forth the procedural requirements of service of process on an individual. An individual within the United States may be served by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made;[6] or

---

[6] Purple does not cite a provision of Florida or California law under which it effected service on Defendants. The Court will therefore analyze the sufficiency of service under Rule 4(e)(2).

(2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Here, Purple's returns of service are typical on their face and are sufficient to establish a prima facie case of proper service. However, Defendants have countered the returns of service with sworn declarations by Jianqiang Huang, Xiaoqin Huang, and Cai, all of which indicate that the Riverside address is not the Huangs' dwelling and that Cai is not authorized to accept service as an agent for either of them. Docs. 25-1, 25-2, 25-3. Upon review of the declarations and the returns of service, the Court concludes that the declarations constitute strong and convincing evidence that overcomes Purple's prima facie case.

Purple has chosen not to submit any additional evidence to counter Defendants' declarations, relying solely on the returns of service. Purple contends that service on Cai was proper under Rule 4(e)(2)(B), because the Riverside address is the dwelling or usual place of abode of both Huangs as well as Cai. Purple also asserts that Cai is the Huangs' authorized agent, pursuant to Rule 4(e)(2)(C). Purple points to the process server's note regarding Cai's alleged statement that Jianqiang Huang is Cai's "boss

16

and co-occupant," Doc. 32 at 2, and Defendants' concession that the Riverside address
is Waykar employee housing.

Purple has not established that service was properly effected under Rule
4(e)(2)(B) or 4(e)(2)(C). With respect to Rule 4(e)(2)(B), Purple has not provided
adequate evidence that the Riverside address is Defendants' dwelling or usual place of
abode, in the face of their sworn denial that it is not. Indeed, Purple fails to explain
why it believes the Riverside address is Defendants' residence. It offers no evidence
that they live there other than Cai's alleged description of Defendants to the process
server as his "co-occupants." The Court gives little weight to this term, which is not
in quotation marks on the returns of service and does not appear to be an exact quote
of Cai's words to the process server, particularly where Cai denies it. In this regard,
Purple's returns of service are unlike the one in *Craigslist, Inc. v. Hubert*, 278 F.R.D. 510
(N.D. Cal. 2011), a case on which Purple relies. In *Craigslist*, the return of service
specified that the process server asked the person who answered the door whether the
defendant lived at the residence, and the person said that they did. *Id.* at 513-14.
Although the person who answered the door testified to the contrary at a hearing, the
court found that his testimony was internally contradictory and incredible compared
to the detailed return of service. *Id.* at 514-15. Cai's affidavit here, on the other hand,
is consistent with Defendants' and is not internally contradictory, while the return of
service is vague and nonspecific.

In addition, the fact that the residence is employer-provided housing for Waykar
employees does not establish that Jianqiang Huang, Waykar's founder, lives there.

17

And his brother Xiaoqin Huang's affiliation with Waykar is unknown. Nor does Jianqiang Huang's statement that he has used the address for "business correspondence" establish it as a location where he has resided. *See, e.g.*, *Gerritsen v. Escobar Y Cordoba*, 721 F.Supp. 253, 256 (C.D. Cal. 1988) (service at place of business does not satisfy the "place of abode" method of service under Rule 4).

The facts of *Hollander*, 2009 WL 3336012 at *4, are instructive. The *Hollander* court found that an affidavit by the defendant's ex-wife stating that he no longer lived at the address of service was sufficient to overcome an affidavit by plaintiff's counsel stating the reasons counsel believed defendant lived there. *Id.* The ex-wife's affidavit provided "strong and convincing evidence" that service was improper. *Id.* Here, Purple does not even justify its apparent belief that Defendants reside at the Riverside address. Defendants' declarations to the contrary are effectively uncontroverted, providing "strong and convincing evidence" that service was improper. *See id.*; *cf. Kammona v. Ontec Corp.*, 587 F. App'x 575, 579 (11th Cir. 2014) (where defendant was served at the address listed on his driver's license, his "bare assertion" that he did not reside there, "absent support or any rebuttal to Kammona's evidence," did not overcome plaintiff's evidence.).

Likewise, Purple also has not proven that Cai is either Defendant's authorized agent for the purpose of Rule 4(e)(2)(C). Because Xiaoqin Huang's affiliation with Waykar is unknown, the Court cannot assume that an alleged employee of Waykar is Xiaoqin Huang's authorized agent. With respect to Jianqiang Huang, even if Cai is an employee of Waykar, which Cai denies, Purple has not established that he is an

agent who is authorized to accept service. "It is well established that where a plaintiff claims that the person on whom process was served was a defendant's agent, the plaintiff must present facts and circumstances showing that the agent had specific authority, express or implied, to receive service of process on the defendant's behalf." *Baxter v. Ameriquest Mortgage Co.*, Civil No. 04-0719, 2005 WL 8158712, *3 (S.D. Ala. Jan. 27, 2005) (collecting cases; concluding plaintiff did not establish that a mailroom employee at defendant's workplace who received service was an authorized agent under Rule 4(e)(2)(C)); *see also*, *e.g.*, *Hill v. Caruso*, No. 1:22-cv-2193, 2023 WL 4996587, *6 (N.D. Ga. Feb. 16, 2023) (service on corporation's registered agent did not constitute proper service on corporation's CEO and vice president); *Brooks v. Knutson*, Civil No. 21-0302, 2021 WL 4302534, *3-4 (S.D. Ala. Sept. 21, 2021) (plaintiff failed to establish proper service even where return of service stated that the person who received service told process server she was authorized to do so, because plaintiff failed to show that the defendant intended to confer such authority); *Brown v. Florida.*, No. 8:13-cv-49, 2013 WL 869534, *3 (M.D. Fla. March 7, 2013) (acceptance of summons and complaint by defendant's coworker did not establish proper service, absent an indication that the coworker was an agent authorized to receive service on his behalf); *Lowe v. Hart*, 157 F.R.D. 550 (M.D. Fla. 1994) (leaving the summons and complaint with an employee at defendants' workplace was not proper service, where defendants' affidavits stated they did not authorize anyone to accept service on their behalf). Here, too, Purple has not established that Defendants authorized Cai to accept service on their behalf.

The cases on which Purple relies are inapposite. In *Felton v. Winter Park Police Dep't*, No. 6:22-cv-898, 2022 WL 8216907, *2 (M.D. Fla. Aug. 2, 2022), the defendant provided no documentation in support of her conclusory claim that the individual was not authorized to accept service on her behalf, such as an affidavit by the defendant or the individual who was served; in contrast, the return of service expressly stated that the individual was so authorized. But here, Defendants have provided three sworn declarations stating that Cai was not authorized to accept service, while Purple's returns of service do not indicate that he was.

Likewise, in *APL Microscopic, LLC v. Corporate Am. Solutions, LLC*, No. 17-23316-CIV, 2017 WL 5290898, *2 (S.D. Fla. Nov. 9, 2017), the return of service indicated plaintiff served an employee of defendant's registered agent, as expressly permitted by Fla. Stat. § 48.062(1). The defendant claimed that the employee had no authority to receive service—but § 48.062(1) does not require such authority. *Id.* As a result, the court found that the defendant failed to rebut the plaintiff's prima facie showing of sufficient service. *Id.* Here, of course, Fla. Stat. § 48.062, which provides for service on a limited liability company, does not apply to Purple's attempts to serve the Huangs, who are individuals.

Accordingly, Defendants are correct that Purple has failed to effect proper service. The Court will grant the motion to dismiss, without prejudice, as to Purple's claims against Jianqiang and Xiaoqin Huang.

### B. __Personal Jurisdiction__

Next, Jianqiang and Xiaoqin Huang contend that this Court lacks personal jurisdiction over them. Personal jurisdiction "concern[s] the extent of a court's power over the parties and the fairness of requiring a party to defend itself in a foreign forum." *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 857 (11th Cir. 1988). "A court without personal jurisdiction is powerless to take further action." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999).

Motions to dismiss for lack of personal jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(2). To withstand such a motion, a plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the nonresident defendant. *See Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010). If the defendant refutes personal jurisdiction by challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate its jurisdictional allegations through evidence of its own. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). The plaintiff has the burden of establishing personal jurisdiction for each defendant. *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

The Court undertakes a two-part inquiry to determine whether it may exercise personal jurisdiction over a nonresident defendant. *Future Tech.*, 218 F.3d at 1249 (citations omitted). First, it must determine whether the applicable state long-arm statute is satisfied. *Id.* If so, then the Court must undertake a due process analysis by

examining whether the nonresident defendant has established sufficient minimum contacts with the forum state, and whether the exercise of jurisdiction over the defendant would offend traditional notions of fair play and substantial justice. *Id.*, citing *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945).

Here, the Court determines that Florida's long-arm statute is not satisfied. As a result, it need not reach the second step of the inquiry. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1319 (11th Cir. 2006) ("Because Yarmuth is not subject to jurisdiction under Florida's long-arm statute, we need not address whether the Due Process Clause permits jurisdiction.").

Purple argues that Defendants are subject to both types of personal jurisdiction under Florida's long-arm statute: general and specific. Doc. 34. With respect to specific jurisdiction, the long-arm statute subjects a defendant to personal jurisdiction in Florida for any cause of action arising from a tortious act committed in Florida. Fla. Stat. § 48.193(1)(a)(2). A defendant may commit a tortious act in Florida by performing an act outside the state that causes injury within it. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2023).

For tortious acts that occur on the internet, such as trademark infringement on a website, Florida's long-arm statute confers specific personal jurisdiction if the complaint contains allegations that the infringing website was not only accessible to Florida residents but also led to actual sales to Florida customers. *Id.*; *Del Valle v. Trivago GMBH*, 56 F.4th 1265 (11th Cir. 2022). In *Louis Vuitton Malletier S.A. v. Mosseri*, the Eleventh Circuit found that a nonresident defendant committed a tortious act in

Florida when he sold trademark-infringing goods to Florida residents through his website. *Id.* at 1354.  The trademark infringement caused injury in Florida—and therefore occurred there—"by virtue of the website's accessibility in Florida." *Id.*; citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008).  Moreover, the complaint "repeatedly alleged" that the defendant was selling infringing goods in Florida; the plaintiff even introduced evidence of a sample sale from the infringing website to a customer located in Florida. *Louis Vuitton*, 736 F.3d at 1354.  The Eleventh Circuit later clarified that the *Louis Vuitton* complaint's "allegations regarding the sale of infringing goods to Florida residents *through the accessible website*" were what sufficed to establish specific personal jurisdiction under § 48.193(1)(a)(2); in other words, the fact that the site was accessible in Florida was not enough on its own. *Del Valle*, 56 F.4th at 1273 (finding specific personal jurisdiction where complaint alleged that defendants derived a benefit from its unlawful activities by "specifically targeting and 'selling' reservations…*to Florida residents through their websites*.") (emphasis in original); *see also TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, No. 13-cv-23066, 2014 WL 11899285, *2 (S.D. Fla. July 15, 2014) (defendant was subject to specific jurisdiction in Florida where the websites that displayed the infringing products were accessible to customers in Florida and generated more sales to and revenue from Florida customers than any other state).

In contrast, the plaintiff failed to establish specific jurisdiction under the long-arm statute in *World Media Alliance Label, Inc. v. Believe SAS*, No. 24-12079, 2025 WL

2102017, *3 (11th Cir. July 28, 2025).  The complaint in *World Media* failed to allege that the infringing material was accessible in Florida or that anyone in Florida actually accessed it.   The court observed that a plaintiff seeking to establish specific personal jurisdiction for committing a "tortious act" in Florida is required to demonstrate, "at a minimum, that any material at issue was both *accessible* in Florida and *actually accessed* by people in the state." *Id.* (emphasis in original), citing *Internet Solutions Corp. v. Marshall*, 39 So.3d 1201, 1203 (Fla. 2010).

Here, Purple contends that the Court has specific personal jurisdiction over the Huangs because they committed "acts of infringement within this district." Doc. 34 at 11.[7]   The problem with this theory is that the Complaint fails to allege that the infringing products were accessible in Florida, let alone actually accessed by people in Florida.  Without these allegations, Purple has not established that either Defendant is subject to specific personal jurisdiction under Florida's long-arm statute for alleged tortious acts in Florida.[8]

Purple has also failed to establish general personal jurisdiction over the Huangs in Florida.  Florida's long-arm statute provides that a nonresident defendant is subject

---

[7] Although Purple does not use the terms "general jurisdiction" or "specific jurisdiction" or cite the correct subsection of the long-arm statute, the Court understands its argument about acts of infringement to refer to specific personal jurisdiction under Fla. Stat. § 48.193(1)(a)(2). *See id.* at 11 n.5, citing *Louis Vuitton*, 736 F.3d at 1356.

[8] Defendants also argue that they are protected from specific jurisdiction by the corporate shield doctrine. Doc. 25 at 8-9.  However, the corporate shield doctrine is inapplicable where a corporate officer is accused of committing intentional torts—which, the *Louis Vuitton* court held, include trademark infringement. 736 F.3d at 1355. Therefore, the corporate shield doctrine is not what protects Defendants from specific personal jurisdiction.

to general personal jurisdiction if he is "engaged in substantial and not isolated activity within this state…whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). The Eleventh Circuit has held that the limits of general personal jurisdiction under § 48.193(2) extend as far as the limits on personal jurisdiction under the Due Process Clause of the Fourteenth Amendment. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (citation omitted). Accordingly, to determine whether there is general jurisdiction under Florida's long-arm statute, the Court must determine whether the exercise of jurisdiction would offend the federal constitution. *Id.*

General jurisdiction is permissible under the federal constitution only when a defendant's contacts or affiliations with the forum are so "continuous and systematic" that he is "essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "[G]eneral personal jurisdiction over nonresident defendants is not to be lightly presumed." *World Media*, 2025 WL 2102017 at *4 (collecting cases); *see also Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000) (the due process requirements for general jurisdiction are "more stringent" than for specific jurisdiction). Accordingly, "only a limited set of affiliations with a forum will render a defendant amenable to" general jurisdiction in that state. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). A corporation's "paradigm forum for the exercise of general jurisdiction" is its place of incorporation or principal place of business, while an individual's is his domicile. *Id.* Outside of that paradigm, the conferral of general jurisdiction would be "an exceptional case[.]" *Id.* at 139 n.19.

Here, neither individual Defendant is domiciled in Florida. Although the complaint alleges that Xiaoqin Huang has a residence in Florida, Doc. 1 ¶ 9, Purple's response in opposition to the motion to dismiss does not refer to this allegation or assert that he is domiciled there. For his part, Xiaoqin Huang states in his declaration that he has never resided in Florida or owned property there, nor conducted any business activities in Florida. Doc. 25-3 ¶¶ 2-5.

Purple argues in its response that the Court may exercise personal jurisdiction over Xiaoqin Huang because "Waykar's extensive contacts with this forum are directly imputed to Xiaoqin"—in that Xiaoqin Huang registered the trademark for "Sersper," a product line that was marketed and sold before the incorporation of Waykar, and that continues to be sold to Florida customers. Doc. 34 at 10-11. This argument is unavailing. Purple has failed to allege, let alone establish, such continuous and systematic contacts between Xiaoqin Huang and Florida that are comparable to being domiciled here. Nor has Purple set forth a basis for imputing Waykar's contacts with Florida to him, given that his affiliation with Waykar is unknown except for the trademark registration. Accordingly, the Court does not have general personal jurisdiction over Xiaoqin Huang.

Jianqiang Huang also denies ever residing in Florida, personally owning property there, or keeping any personal assets there. Doc. 25-2 ¶¶ 2, 8-9. Purple contends that general personal jurisdiction arises through Jianqiang Huang's substantial connection to Waykar. Specfically, Puprle argues that he engages in substantial and continuous contacts with Florida through his "agent" Waykar, a

company organized under Florida law with a registered office in Florida. Doc. 34 at
9-10.  Purple points out that Jianqiang Huang serves as Waykar's founder, CEO, Vice
President, and CFO, and describes himself on his LinkedIn profile as "[l]eading
Waykar since its inception." *Id.*; *see* Doc. 1 ¶ 63.

Purple's arguments invoke the alter ego doctrine. *See* Doc. 1 ¶ 70 ("The
corporate Defendants are alter egos and/or mere instrumentalities of the individual
Defendants…").  Under Florida law, the alter ego theory of long-arm jurisdiction
subjects a nonresident shareholder of a resident corporation to long-arm jurisdiction
where the complaint alleges facts sufficient to pierce the corporate veil of the resident
corporation. *Bellairs v. Mohrmann*, 716 So.2d 320, 322 (Fla. 2d DCA 1998) (citations
omitted).  Piercing the corporate veil requires the plaintiff to establish two prongs: (1)
"that the corporation is a mere instrumentality or alter ego of the defendant," (2) that
the defendant engaged in improper conduct in the formation or use of the
corporation." *Abdo v. Abdo*, 263 So.3d 141, 149 (Fla. 2d DCA 2018) (citations and
quotations omitted).

With respect to the first prong, improper conduct is present only in "cases in
which the corporation was a mere device or sham to accomplish some ulterior
purpose…or where the purpose is to evade some statute or to accomplish some fraud
or illegal purpose." *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 S.2d 1114, 1117 (Fla. 1984)
(quotation omitted).  Moreover, "[t]o show that a corporation is a mere
instrumentality or alter ego of another person" under the second prong, "the plaintiff
must plead and ultimately prove that the shareholder dominated and controlled the

corporation to such an extent that the corporation's independent existence, was in fact

nonexistent and the shareholders were in fact alter egos of the corporation." *Abdo*, 263

So.3d at 149 (citations and quotations omitted).

In *Bellairs v. Mohrmann*, 716 So.2d 320, 323 (Fla. 2d DCA 1998), for example,

the plaintiff adequately pleaded the alter ego doctrine for the purpose of personal

jurisdiction over a Florida corporation's individual shareholders, who did not reside

in Florida.  The *Bellairs* complaint alleged that the corporation "was a hollow shell

with no ability to meet the obligations" of the parties' contract, that it "never had any

existence separate and distinct from its shareholders," and it was "a mere

instrumentality of its shareholders and…was used for improper conduct"; in addition,

that the shareholders "failed to observe corporate formalities… [and] did not recognize

the existence of [the corporation] as a corporation in their own dealings." *Id.*

Similarly, in *Garcia v. Character Techs., Inc.*, No. 6:24-cv-1903, --- F.Supp.3d ---, 2025

WL 1461721, *7 (M.D. Fla. May 21, 2025), the court denied without prejudice the

individual defendants' motion to dismiss for lack of personal jurisdiction and allowed

the plaintiff to engage in jurisdictional discovery because the complaint's allegations

could "conceivably" support an alter ego theory.  The complaint in *Garcia* alleged that

the individual defendants "formulated, directed, controlled, had the authority to

control, or participated in the acts and practices" of the company, "personally"

conducted or directed company employees to conduct a substantial portion of the

alleged actions, and formed the company for the specific unlawful purpose alleged in

the complaint, before leaving behind "a shell of a company." *Id.*

In contrast, conclusory allegations that merely track the legal standard are insufficient. In *Parisi v. Kingston*, 314 So.3d 656, 664-65 (Fla. 3d DCA 2021), the complaint's allegation that a corporation was "operated as the alter-ego of" an LLC's individual owner and was "used fraudulently for the improper purpose" of the conduct alleged in the complaint was not enough to establish personal jurisdiction under an alter ego theory. Similarly, in *Abdo*, 263 So.3d at 150, the allegation that the individual defendant was a managing member of a company that engaged in misconduct, and the conclusory claim that the company was his alter ego, were insufficient to establish the alter ego theory.

Moreover, "'[t]he law is clear that the mere ownership of a corporation by a few shareholders, or even one shareholder, is an insufficient reason to pierce the corporate veil.'" *Duran v. Joekel*, No. 2:23-cv-558, 2024 WL 2384963, *6 (M.D. Fla. May 23, 2024), quoting *Gasparini v. Pordomingo*, 972 So.2d 1053, 1055 (Fla. 3d DCA 2008). In *Duran*, allegations that one individual defendant was the "sole owner and principal" to whom "senior operations people reported directly," and the other defendant was the executive vice president who made operational decisions, were not enough to pierce the corporate veil. 2024 WL 2384963 at *6. On the other hand, uncontroverted allegations that the individual defendant "unilaterally controlled" the company," "ignored corporate formalities, and commingled his personal assets with corporate assets," such that the company "was a corporation in name only" and that the individual "[wa]s, legally" the company, were sufficient to establish personal

29

jurisdiction under federal law in *United States ex rel. Mortgage Investors Corp.*, 987 F.3d 1340, 1356 (11th Cir. 2021).

Here, Purple's allegations are insufficient to establish personal jurisdiction over Jianqiang Huang under an alter ego theory. The complaint alleges that "[t]he corporate Defendants are alter egos and/or mere instrumentalities of the individual Defendants, created for an improper purpose to further the infringing activities, and as a deliberate tactic to conceal each Defendant's illegal conduct to intentionally and willfully profit from the infringement of Plaintiff's brand and goodwill." Doc. 1 ¶ 70. These conclusory allegations, like those in *Parisi*, 314 So.3d at 664-65, and *Abdo*, 263 So.3d at 150, are insufficient to pierce the corporate veil. Aside from this conclusory statement, the Complaint fails to plausibly allege either required prong: that Waykar is a sham company or that it was formed for the sole purpose of infringement. *See Abdo*, 263 So.3d at 149. The Complaint alleges only that Jianqiang Huang is the dominant force behind Waykar, and a "driving force behind and active participant in the unlawful and infringing conduct" alleged. But ownership and control over a company and its alleged unlawful conduct is not enough to pierce the corporate veil. *See Gasparini*, 972 So.2d at 1055. Accordingly, the alter ego theory does not subject Jianqiang Huang to personal jurisdiction in Florida.

The Court lacks personal jurisdiction over both Jianqiang and Xiaoqin Huang. Accordingly, the claims against them are due to be dismissed without prejudice. Therefore, the Court need not, and will not, reach their final argument that the Complaint fails to state a claim. *See, e.g., Republic of Panama v. BCCI Holdings*

30

*(Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997) ("As a general rule, courts should

address issues relating to personal jurisdiction before reaching the merits of a plaintiff's

claims.  A defendant that is not subject to the jurisdiction of the court cannot be bound

by its rulings.") (citations omitted).  Defendants' motion to dismiss is due to be

granted, to the extent that Purple's claims against Jianqiang and Xiaoqin Huang will

be dismissed without prejudice.

## IV.    CONCLUSION AND MOTION TO STAY (Doc. 39)

The Court has found that the Complaint is due to be dismissed, without

prejudice, for improper venue, and that Purple's claims against Jianqiang and Xiaoqin

Huang must be dismissed, without prejudice, for insufficient service of process and

lack of personal jurisdiction.  However, the Court observes that additional allegations

and evidence may resolve some of the deficiencies discussed herein.  In its response in

opposition to Jianqiang and Xiaoqin Huang's motion to dismiss, Purple requested the

opportunity for jurisdictional discovery. Doc. 34 at 20.  The Court finds that a limited

period of jurisdictional discovery regarding venue and personal jurisdiction is

appropriate.  Accordingly, the Court will permit Purple to engage in discovery with

Waykar and American Serleep for a period of 90 days.  Should Purple choose to

continue to pursue this action in the Middle District of Florida, Purple is granted leave

to file an Amended Complaint within the same 90-day period.

The Court's conclusions regarding the first two motions and the period of

jurisdictional discovery also compel a resolution of the third pending motion.

Defendants Waykar and American Serleep have moved to stay this action until 30

days after the resolution of the South Carolina action and all Defendants are served,
or for a period of 90 days. Doc. 39.  First, Defendants indicate they intend to appeal
the South Carolina action, and, if they are successful, the first-filed rule would apply.
*Id.* at 2.  Second, Waykar and American Serleep point out that there are three other
Defendants who have not been served yet, and there is a pending challenge to the
adequacy of service of process as to Jianqiang Xiaoqin Huang. *Id.*  Waykar and
American Serleep argue that having to engage in discovery before the remaining
Defendants are served would lead to duplication and an undue burden on them, given
the interrelation of the allegations of the Complaint with respect to all Defendants. *Id.*
at 4-5.

Purple opposes a stay as unnecessary and unwarranted. Doc. 40.  Purple points
out that this case has already progressed further than the South Carolina action. *Id.*  It
also argues that incomplete service does not justify a stay. *Id.*  Purple further asserts
that the delay in service is a problem of Defendants' own making, in that Defendants
refused to waive service or authorize their joint counsel to accept service on the
unserved Defendants' behalf. *Id.* at 5.

Waykar's and American Serleep's motion to stay is due to be denied.  First, an
indefinite stay of this case until the resolution of the appeal of the South Carolina
action, a process which may take a year or more, is not in the interest of judicial
economy.  Second, the request to stay discovery until all Defendants have been served
is due to be denied in light of the Court's finding that jurisdictional discovery is
appropriate.  Third, the 90-day period of jurisdictional discovery will last beyond

November 3, 2025, which is Purple's deadline to serve the remaining Defendants. *See* Doc. 48.  In other words, the remaining Defendants should be served by the time the jurisdictional discovery period expires.  Therefore, the Court declines to stay this action.

Accordingly, it is **ORDERED**:

1. Defendants American Serleep Inc. and Waykar Inc.'s Motion to Dismiss, Transfer, or Stay (Doc. 22) is granted-in-part and denied-in-part. The motion is granted to the extent that the Complaint (Doc. 1) is dismissed, without prejudice and with leave to amend, for improper venue.

2. Defendants Jianqiang Huang and Xiaoqin Huang's Motion to Dismiss (Doc. 25) is granted.  The claims against Jianqiang Huang and Xiaoqin Huang are dismissed, without prejudice, for insufficient service of process and lack of personal jurisdiction.

3. Defendants Waykar and American Serleep's Motion to Stay (Doc. 39) is denied.

4. Plaintiff may conduct limited jurisdictional discovery, as described herein, for a period of ninety (90) days from the date of this Order.

5. Plaintiff is granted leave to file an Amended Complaint within ninety (90) days from the date of this Order.  The failure to file an Amended Complaint within the time provided may lead to dismissal of this action, without prejudice, without further notice.

**DONE** and **ORDERED** in Tampa, Florida on August 29, 2025.

Charlene Edwards Honeywell
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties