IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| PURPLE INNOVATION, LLC, a Delaware limited liability company, | |
| | JURY TRIAL DEMANDED |
| Plaintiff, | |
| | |
| v. | Case No.: 8:25-cv-00266-CEH-SPF |
| | |
| WAYKAR, INC., a Florida corporation, and AMERICAN SERLEEP INC., a Washington corporation, | |
| | |
| Defendants. | |

## FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, PURPLE INNOVATION, LLC ("Plaintiff" or "Purple"), through its undersigned attorneys, for its First Amended Complaint for Damages and Injunctive Relief against Defendants, WAYKAR, INC. ("Waykar"), and AMERICAN SERLEEP INC. ("Serleep") (collectively, "Defendants"), and alleges:

## NATURE OF THE ACTION

1.    This is an action for trademark infringement, false designation of origin, and unfair competition under the Trademark Act, 15 U.S.C. §§ 1051, *et seq.*, as amended (the "Lanham Act"), and related claims under the statutory and common law of the State of Florida, all arising from the Defendants' unauthorized use of Purple's Asserted Marks (as defined and detailed below) in connection with

the importation, manufacture, distribution, marketing, advertising, promotion, offering for sale and sale of Defendants' competing mattress products.

2.    All such conduct was done blatantly and deliberately intending to trade on the goodwill, distinction, and reputation of Plaintiff's brand, cause confusion and deception, and divert sales of Plaintiff's products to the Defendants.

3.    Plaintiff seeks entry of a permanent injunction and an award of Defendants' profits, actual damages, and other related relief.

## THE PARTIES

4.    Plaintiff Purple Innovation, LLC, is a Delaware limited liability company, with its principal place of business in Lehi, Utah, and the proud and exclusive owner of the renowned Purple® brand.  Driven by a mission to enhance lives through groundbreaking comfort solutions, Purple delivers a diverse array of innovative, premium-branded comfort products, including mattresses, pillows, bedding, and frames. Plaintiff's products are the culmination of decades of innovation and substantial investment in proprietary and patented comfort technologies, and are crafted through unique manufacturing processes that set Purple apart as a leader in the comfort industry.

5.    Defendant Waykar, Inc., is a Florida corporation, incorporated on June 21, 2021, with a registered office in Gaffney, South Carolina.  At all relevant times, Waykar maintained a registered agent office in St. Petersburg, Florida,

evidencing its purposeful formation, presence, and operation in Florida.

6.      Defendant American Serleep Inc., is a Washington corporation, with a current registered agent office in Spokane, Washington. Acting in concert with Waykar, Serleep has purposefully directed infringing activities into Florida and this District.

7.      Working together, Waykar and Serleep launched and executed a coordinated scheme to profit from infringement of Purple's well-known Purple® trademarks and trade dress by marketing and selling competing mattress products (as further described below, the "Infringing Products") bearing identical or confusingly similar trademarks, including purple-colored labels, tags, packaging, and trade dress (the "Infringing Marks"), with the intent and effect of trading on Purple's goodwill.

8.      Defendants import, offer for sale, and sell the Infringing Products through multiple e-commerce channels under various trade names, including SERSPER, SERWEET, KESCAS, SERLEEP, AEROCHAR, and ALWYN HOME (collectively, the "Trade Names").

9.      Defendants' infringing acts have caused, and are likely to cause, confusion, mistake, and deception among consumers as to the source or origin of the Defendants' Infringing Products and have deceived, and are likely to continue to deceive, the consuming public into believing, mistakenly, that they originate

from, are associated or affiliated with, or are otherwise authorized by Plaintiff.

10.    Defendants' conduct has caused, and is likely to continue causing, consumer confusion, mistake, and deception as to the source, sponsorship, affiliation, or approval of the Infringing Products, including by consumers nationwide, thereby irreparably injuring Purple's brand, goodwill, and reputation.

11.    Defendants have also strategically designed their online sales and fulfillment operations to target Florida consumers, a key market in the comfort product industry, resulting in substantial sales volumes.

12.    Defendants have sold and continue to sell infringing products to Florida residents, including in this District, through targeted online listings, using Florida-based logistics companies, and order fulfillment into Florida.

13.    A non-party online marketplace that sells Defendants' Infringing Products also uses a Florida-based warehouse to store and ship Defendants' Infringing Products to and from the state, demonstrating ongoing, systematic distribution of the Infringing Products into the state and this District.

14.    Thousands of Defendants' products have been identified already as having been sold to Florida customers, with hundreds specifically sold to consumers in this District, establishing significant business contacts in the state and District.

15.     This has led to confusion and deception occurring within Florida.

16.     Defendants' intentional and continuing infringement has caused, and will continue to cause, immediate and irreparable harm to Purple, including loss of control over its marks and trade dress, damage to its goodwill, and consumer confusion in the United States, and also specifically among Florida consumers.

17.     The complained of business activities and resulting injuries stem from Defendants' Florida-centered conduct, including Waykar's formation and operation in Florida since 2021 and the revenue they have derived from the sales made into Florida and this District.

18.     In response to the filing of this lawsuit, Waykar filed articles of dissolution with the Florida Department of State on April 3, 2025 and Waykar's principal changed his public-facing profile to display a different alias and removed content previously published.

19.     Upon information and belief, additional entities and individuals are involved in, and benefit from, Defendants' infringement scheme, and are responsible in some manner for the actions and damages alleged herein. However, Defendants have refused to produce documents or disclose information in their preliminary discovery responses regarding management, corporate structures, and affiliations of the entities and individuals involved, except for

5

documents that are publicly available.  Plaintiff may seek leave to amend its first amended complaint to add these individuals and entities once additional information is obtained.

## JURISDICTION AND VENUE

20.    Plaintiff's claims are predicated upon the Lanham Act of 1946, as amended, 15 U.S.C. § 1051, *et seq.*, and related claims under the statutory and common law of the State of Florida.

21.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a) and 1338(b), and has supplemental jurisdiction over Plaintiff's state and common law claims under 28 U.S.C. § 1367(a).

22.    Defendant Waykar, Inc., incorporated and operating under Florida law, has maintained a registered office in St. Petersburg, Florida throughout its existence, establishing a clear and continuous presence in the state.  Waykar has generated over three hundred thousand dollars in revenue from sales to Florida consumers (that have been identified so far), highlighting significant economic activity in the state. This includes more than two hundred units sold in this District.  Waykar has also admitted that it has shipped products to Florida addresses, advertised and promoted its products to Florida residents, entered into contracts with customers through online transactions, used Florida-based logistics and shipping companies, and earned and received revenue from Florida sales.

Waykar admittedly is withholding business records relating to its Florida-based business activities.

23.    Similarly, Serleep has generated over two hundred and fifty thousand dollars in revenue from sales to Florida consumers (that have been identified so far), highlighting significant economic activity in the state. This includes more than one hundred units sold in this District.  Serleep admitted that it has shipped products to Florida addresses, advertised and promoted its products to Florida residents, entered into contracts with customers through online transactions, used Florida-based logistics and shipping companies, and earned and received revenue from Florida sales.  Serleep admittedly is withholding business records relating to its Florida-based business activities.

24.    Waykar and Serleep are thus subject to personal jurisdiction, and have not objected to personal jurisdiction, in Florida, given their deliberate and substantial engagement with the state's market having committed, and continuing to commit, acts of infringement here, directly impacting the local market and consumers and deriving revenue from it.

25.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Waykar and Serleep are deemed to reside here, as they are subject to personal jurisdiction with respect to this civil action according to § 1391(c)(2). Additionally, under § 1391(d), their contacts with this District are sufficient to establish

residency, as if it were a separate state. Alternatively, they are deemed to reside here in this District due to their most significant contacts in Florida (that have been identified so far) being within it.

26.    Venue is also appropriate under 28 U.S.C. § 1391(b)(2) because a substantial part of the events, including the sale and passing off of Infringing Products and resulting consumer confusion, occurred in this District.

27.    If venue is not proper under these sections, it remains valid under 28 U.S.C. § 1391(b)(3). This section allows venue in any district where a defendant is subject to personal jurisdiction if no other suitable district is identified. Here, all Defendants are subject to this Court's personal jurisdiction, and no other district has been identified as more suitable.

## GENERAL ALLEGATIONS

### Plaintiff's Purple® Trademarks and Trade Dress

28.    Since as early as 2015, Plaintiff began developing itself as an innovation leader in the field of sleep and furniture.

29.    Plaintiff quickly increased its distribution and, in January 2016, launched an online store, becoming one of the first "bed in a box" companies to sell mattresses and other bed accessories directly to consumers exclusively via its online store.

30.    In addition to its online store, Plaintiff now has over fifty-five

8

company-owned retail stores at locations across the United States, including within Florida and this district, and its products are sold in over three thousand retail stores nationwide through its wholesale customers.

31.    Plaintiff designs, manufactures, and sells, domestically and internationally, innovative and technologically advanced comfort products, including mattresses, pillows, seat cushions, beds, bedding, bases, and related products, through direct-to-consumer online channels, traditional retail partners, third-party online retailers and Purple® branded retail showrooms.  Purple is well known for these products, including its original Purple® mattress.

32.    With its products, Plaintiff has continuously used, for almost a decade, and is the exclusive owner and holder of both valid and subsisting federal statutory rights and common law rights to the Purple® trademarks and trade dress, including substantial goodwill therefor.

33.    Plaintiff is the owner of the following U.S. Trademark Registrations, for the Purple® trademarks:

| U.S. Reg. No. | Reg. Date | Trademark |
| --- | --- | --- |
| 5005282 | July 19, 2016 | Purple® |
| 5659866 | Jan. 22, 2019 | Purple® |
| 5661556 | Jan. 22, 2019 | Purple® |
| 5906647 | Nov. 12, 2019 | Purple® |
| 5906645 | Nov. 12, 2019 | Purple® |
| 6083965 | June 23, 2020 | Purple® |
| 6551053 | Nov. 09, 2021 | Purple® |
| 5661555 | Jan. 22, 2019 | **purple**® |

| U.S. Reg. No. | Reg. Date | Trademark |
|---|---|---|
| 5659565 | Jan. 22, 2019 | **purple**® |
| 5906646 | Nov. 12, 2019 | **purple**® |
| 5906644 | Nov. 12, 2019 | **purple**® |
| 7316235 | Feb. 27, 2024 | **purple**® |
| 6075633 | June 09, 2020 | The Purple Powerbase® |
| 6147600 | Sept. 08, 2020 | The Purple Mattress® |
| 6147602 | Sept. 08, 2020 | Purple Hybrid Premier® |
| 6147601 | Sept. 08, 2020 | Purple Hybrid® |
| 6152374 | Sept. 15, 2020 | Purple Pay® |
| 6240543 | Jan. 05, 2021 | Purple Grid® |
| 6393089 | June 22, 2021 | Purple Duvet® |
| 6393088 | June 22, 2021 | Purple Sheets® |
| 6393109 | June 22, 2021 | Purple Plush® |
| 6393108 | June 22, 2021 | Purple Plush Pillow® |
| 6393128 | June 22, 2021 | Purple Platform Bed Frame® |
| 6393127 | June 22, 2021 | Purple Foundation® |
| 6393107 | June 22, 2021 | Purple Pillow® |
| 6393110 | June 22, 2021 | Purple Mattress Protector® |
| 6423325 | July 20, 2021 | Purple Powerbase® |
| 6603673 | Dec. 28, 2021 | Purple Plus® |
| 6890513 | Nov. 01, 2022 | Purple Cloud® |
| 6890512 | Nov. 01, 2022 | Purple Twincloud® |
| 7108425 | July 11, 2023 | Purple Ascent® |
| 7443361 | July 09, 2024 | Purple Luxe® |
| 7488994 | Aug. 27, 2024 | Sleep Purple, Live Better. ® |
| 7497354 | Sept. 03, 2024 | PurpleRenew® |
| 7492965 | Sept. 03, 2024 | Purple Mattress® |
| 7503961 | Sept. 10, 2024 | Sleep Better. Live Purple. ® |
| 7579963 | Nov. 26, 2024 | Purple Premier® |
| 7627393 | Dec. 24, 2024 | Purple Gelflex Grid® |
| 7951869 | Sept. 16, 2025 | PURPLEFLEX® |
| 7982972 | Oct. 14, 2025 | **purple** |

| U.S. Reg. No. | Reg. Date | Trademark |
|---|---|---|
| 7982976 | Oct. 14, 2025 | **purple** |
| 7982994 | Oct. 14, 2025 | **purple** |

34.   All such registrations are valid and subsisting, in full force and effect.  Attached as **Exhibit 1** are the registration certificates for Reg. Nos. 5659866, 5661556, 5906647, 5906645, 6083965, 6551053, 5661555, 5659565, 5906646, 5906644, 7316235, 6075633, 6147600, 6147602, 6147601, 6152374, 6240543, 6393089, 6393088, 6393109, 6393108, 6393128, 6393127, 6393107, 6393110, 6423325, 6603673, 6890513, 6890512, 7108425, 7443361, 7488994, 7497354, 7492965, 7503961, 7579963, 7627393, 7951869, 7982972, 7982976, and 7982994 on the Principal Register, and for Reg. No. 5005282 on the Supplemental Register.

35.   Plaintiff is also the owner of U.S. Trademark Application No. and 90623651 for PURPLE HARMINI, pending registration on the Principal Register.

36.   Plaintiff has continuously used the Purple® trademarks stylized in the color purple as shown below:

   

37.   Plaintiff has exclusively and continuously used the color purple applied to its distinctive product labels, tags and packaging for mattresses and

mattress related products, as shown below (collectively, all such word marks and
designs, the "Trademarks").









38.     Plaintiff has exclusively and continuously applied the color purple, including as shown below, to mattresses and related products (the "Trade Dress"; together with the Trademarks, the "Asserted Marks").



39.     Plaintiff is the owner of the following U.S. Trademark Registrations for the Asserted Marks:

| U.S. Reg. No. | Reg. Date | Trademark |
|---|---|---|
| 5352289 | Dec. 5, 2017 | |
| 6971734 | Feb. 7, 2023 | |
| 6971733 | Feb. 7, 2023 | |
| 6971732 | Feb. 7, 2023 | |

40.     Such registrations are valid and subsisting, in full force and effect. Attached as **Exhibit 2** are the registration certificates for Reg. Nos. 6971734, 6971733, and 6971732 on the Principal Register, and for Reg. No. 5352289 on the Supplemental Register.

41.     Further images of Plaintiff's Asserted Marks, adopted as early as 2015, 2018 and 2023, respectively, are shown below:



42.     Plaintiff is the owner of U.S. Trademark Application Nos. 97931659, 98505110, and 98505014, for the Trademarks and Trade Dress shown in paragraph 46, for registration on the Principal Register.

43.     Plaintiff's Asserted Marks have been consistently and prominently used on the mattresses and related products themselves and on labels, tags, packaging, in sales materials, and in consumer advertising for Plaintiff's mattresses and related products, including in the ones displayed below.  Examples of marketplace uses are attached as **Exhibit 3**.





44.    The products are offered and sold under the Asserted Marks, by Plaintiff, through various means and modes throughout the United States and the world, including at retail, wholesale, in over 3,000 top specialty stores, and on the Internet, including Plaintiff's website at www.purple.com.

45.    Plaintiff's website, at www.purple.com, on which Plaintiff's branded products are marketed and offered for sale, continuously and consistently uses the Asserted Marks.

46.    Plaintiff's social media pages on Facebook, Instagram and Twitter, on which Plaintiff's branded products are marketed, have also continuously and consistently used the Asserted Marks.

47.    Since the color purple is prevalent on each page of Plaintiff's marketing materials, and its mattress products are purple in color, hundreds of millions of people have been, and continue to be, repeatedly exposed to the color purple on Plaintiff's goods and in association with such goods.

48.    Plaintiff's focus on innovation, research and development investment have resulted in widespread recognition in the sleep and comfort industry.

49.    J.D. Power ranked Plaintiff #1 in customer satisfaction, comfort and support for the bed-in-a-box category in 2019 and 2020, establishing Plaintiff as a leader in the growing online mattress market.

50.     Plaintiff's Asserted Marks and the products offered thereunder have received significant unsolicited coverage in various forms of media and outlets.

51.     As a result of its widespread, continuous, and exclusive use of the Asserted Marks to identify its products and Plaintiff as their source, Plaintiff owns and holds not only valid and subsisting federal registrations described above, but also exclusive common law rights and substantial goodwill in and to each of the Asserted Marks.

52.     Plaintiff has expended substantial time, money, and other resources in developing, marketing, advertising, and otherwise promoting its brand, including the Asserted Marks and the products sold thereunder.

53.     Specifically, since 2016, Plaintiff has spent over $1 billion to advertise and market its goods, all of which include and emphasize the Asserted Marks, including online, social media, and television, radio and other media outlets.

54.     This significant investment has resulted in the sale of over a million mattress products branded with Plaintiff's Asserted Marks.

55.     Plaintiff's Asserted Marks give Plaintiff a competitive advantage and have become, through widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of Plaintiff, its high-quality goods, and its goodwill.

56.     The Asserted Marks as used on mattresses serves no purpose or

function other than to identify Plaintiff as the source of the goods.

57.    In advertising and packaging its products, Plaintiff uses the Asserted Marks to readily identify goods offered exclusively by Plaintiff and to let the consumer easily identify Plaintiff as the source of its products.

58.    Because of Plaintiff's exclusive and extensive use of the Asserted Marks with Plaintiff's mattresses, the Asserted Marks have come to be uniquely associated with and are distinctive for Plaintiff, its brand, and its products.

59.    Plaintiff's color purple in Plaintiff's distinctive design marks, product labels, tags, and packaging, and its Trade Dress, have all become synonymous with Plaintiff and the Trademarks, and has acquired strong secondary meaning within the minds of the relevant consuming public.

60.    Recent internal brand studies across all U.S. regions demonstrate high brand awareness and strong consumer recognition of the Trade Dress as identifying Plaintiff as the source of the goods. This compelling evidence establishes that the Trade Dress has acquired distinctiveness.

61.    As a result of Plaintiff's extensive advertising and efforts, the Asserted Marks are widely and favorably known, across the United States and internationally to the trade and purchasing public, to exclusively identify the sole source of the products offered by Plaintiff, to signify the high quality of the products designated by the Asserted Marks, and to have acquired incalculable

distinction, reputation, and goodwill value belonging exclusively to Plaintiff.

62.     Plaintiff scrupulously and successfully enforced and protected its rights herein under Plaintiff's Asserted Marks against past infringement to protect the valuable rights and excellent reputation Plaintiff has worked so hard to achieve and to prevent public confusion.

63.     Plaintiff has successfully enforced its Asserted Marks against Defendants' product listings for the Infringing Products offered under the SERSPER Trade Name on marketplaces and social media.

## DEFENDANTS' UNLAWFUL ACTIVITIES

64.     In and around 2019 or 2020, recognizing the immense selling power and the goodwill, distinction, and reputation that Plaintiff had meticulously built around the Purple® brand, Defendants' representatives—including Junwen Zheng, founder and original CEO of Serleep and owner of the KESCAS Trade Name, along with Jianqiang Huang, the founder, CEO, VP, and CFO of Waykar and current governor for Serleep—conspired to launch a calculated infringement campaign.  Discovery is ongoing regarding Defendants' representatives and other individuals connected to the Defendants, including their involvement in the infringing activities and their ties to this state and District.

65.     The campaign focused on targeting Plaintiff for the purpose of blatantly and deliberately confusing and diverting customers from Plaintiff's

products to Defendants' products to harm Plaintiff and its brand, and to profit unfairly from Plaintiff's brand and goodwill.

66.    In June 2021, Jianqiang Huang formed Defendant Waykar, Inc., under the laws of Florida.

67.    Defendant Waykar began marketing and selling home appliances and indoor and outdoor furniture products, as described on Jianqiang Huang's prior LinkedIn profile, located at www.linkedin.com/in/waykar-chad/, and on the websites located at www.waykarhome.com and www.waykar.com.  Copies of the LinkedIn profile (prior and current) and these websites are attached as **Exhibit 4A and 4B** and **Exhibit 5**, respectively.

68.    Following the filing of this lawsuit, Jianqiang Huang—previously listed as "Jianqiang (Chad) Huang" on his LinkedIn profile (*see* Exhibit 4A)—changed the content in his profile.  His current profile uses the alias "Chad Wong". He also removed references to Waykar's furniture products that were previously included in the published content.

69.    It has been identified that Waykar's CEO interchangeably also uses, and has used, the names "Jianqiang Huang", "Jianqiang Wong", "Chad Huang", and "Chad Wong" as different aliases for himself, including on public company filings and in agreements with e-commerce marketplaces.

70.    Waykar's appliances and furniture products are offered through a variety of online retailers and marketplaces.

71.    In April 2022, in his capacity as CEO, Junwen Zheng formed Defendant American Serleep Inc., under the laws of Washington.

72.    By August 2022, Jianqiang Huang was officially appointed Governor of Serleep, as documented with the Washington Secretary of State.

73.    As shown on Exhibit 4A, Jianqiang Huang previously self-described Waykar's furniture sales as being operated under a division within the Florida-entity Waykar.

74.    In execution of the scheme to profit through infringement of Plaintiff's brands, Defendants adopted and began to use the Infringing Marks, and working in concert, began importing and selling the Infringing Products through multiple channels, including through e-commerce websites, such as Amazon.com, Target, Kohl's, Lowe's, Overstock, Walmart, The Home Depot, Sears, Wayfair, eBay, and Defendants' own websites.

75.    For example, Waykar offers the Infringing Products on eBay.com, excerpts of which are shown below and in the attached **Exhibit 6**.



76.     Serleep also offers and sells the Infringing Products through its website at www.serleep.com, as set forth below, and in the attached **Exhibit 7.**





77.    The Infringing Products are also offered and sold through the "Sersper Store" on Amazon.com and the Sersper website, located at www.sersper.com.    Excerpts of these advertisements are shown below and attached as **Exhibit 8.**



23



78.     Waykar further offers and sells Infringing Products on online marketplaces like Target and Kohl's. These websites identify "Waykar Inc." as the "seller" and "shipper" of the Infringing Products. Excerpts of these advertisements are shown below and are attached as **Exhibit 9** and **Exhibit 10**.



79.     The Infringing Products are also offered and sold under the
"Serweet" Trade Name on the marketplace at www.walmart.com as shown below,
and in the attached **Exhibit 11.**



80.     Waykar and Serleep are also offering for sale and selling the
Infringing Products under the Kescas Trade Name on www.wayfair.com as set
forth below, and in the attached **Exhibit 12.**



81.     Even after the filing of Plaintiff's initial complaint, the Infringing Products continue to be sold under additional Trade Names, ALWYN HOME and AEROCHAR, including on www.wayfair.com, as set forth below, and in the attached **Exhibit 13**.



82.     On April 3, 2025, Waykar's representative, Jianqiang Huang, filed articles of dissolution with the Florida Department of State but, since then, Waykar continues to sell Infringing Products, including to Florida residents.

83.     Both Defendants have played a substantial and critical role and are both acting in concert to infringe on Plaintiff's Trade Dress and usurp the goodwill and reputation associated with Plaintiff and its brands.

84.     Upon learning of Defendants' adoption and use of the Infringing Marks to draw attention and traffic to Defendants' mattress products being offered through various online channels, Plaintiff submitted take down requests.

85.     Despite numerous successful take down submissions, Defendants continue and expand their infringement activities, evidencing their disregard for Plaintiff's trademark rights in violation of federal and state law.

86.     Infringing Products have been sold and shipped, and continue to be sold and shipped off, to consumers throughout the United States, which activities have given rise to Plaintiff's infringement claims against Defendants.

87.     Thousands of units of infringing mattress products have been identified so far that were sold, amounting to over five hundred thousand dollars in infringing sales by Waykar and Serleep combined (as identified so far), to Florida consumers, including to consumers with shipping addresses in this District.

88.     Defendants' Infringing Products are also stored and shipped at Florida-based warehouse owned by an online marketplace, facilitating sales of Defendants' Infringing Products to and from the state.

89.     Preliminary discovery revealed Waykar and Serleep have both: (a) conducted business in Florida, selling and delivering Infringing Products under the Trade Names to Florida consumers; (b) advertised and contracted with Florida consumers via third-party platforms and their own websites; (c) used the color purple on product labels under the SERSPER Trade Name; (d) utilized Florida-based logistics and shipping services; (e) engaged in business activities in Florida, which activities are admittedly shown in their business records; and (f) complied with Florida laws and regulations.  Waykar also used a Florida address for business correspondence and shipping, supported by an agent for service of

process in St. Petersburg, Florida.

90.    Defendants' infringing acts have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendants' Infringing Products and have and are likely to deceive the relevant consuming public into believing, mistakenly, that they originate from, are associated or affiliated with, or are otherwise authorized by Plaintiff.

91.    In an effort to bootstrap its products and benefit from the selling power of Purple's brand, Defendants have acted willfully, aiming to exploit the goodwill and reputation of Plaintiff's Asserted Marks, to cause confusion and deception, and to divert potential sales of Plaintiff's products to the Defendants.

92.    Defendants' activities, including sales made and shipped to Florida and this District, are causing, and unless restrained, will continue to cause damage and irreparable harm to Plaintiff and to its valuable hard-earned reputation, distinction and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

93.    As a result of Defendants' infringing activities and unfair competition, individually and collectively, Plaintiff has been damaged.

94.    Plaintiff has retained the undersigned counsel and is obligated to pay a reasonable fee in connection with this action.

## COUNT I
## Federal Trademark Infringement against All Defendants

95.     Plaintiff adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1-94 as if set forth in this paragraph.

96.     Plaintiff is the sole and exclusive owner of the federally-registered Asserted Marks.

97.     Plaintiff's Asserted Marks, as used by Plaintiff in connection with its goods, are inherently distinctive and/or have acquired secondary meaning.

98.     Defendants have used and are continuing to use the Infringing Marks to provide the same or substantially similar goods as those offered by Plaintiff.

99.     Defendants' activities complained of herein have been without Plaintiff's consent.

100.     Defendants' unauthorized use in commerce of the Infringing Marks is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' products, and is likely to cause consumers to believe, contrary to fact, that Defendants' products are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are affiliated with or sponsored by Plaintiff. Defendants' conduct constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

101.     Defendants have committed the foregoing acts of infringement with

full knowledge of Plaintiff's prior rights in the Asserted Marks and with the willful intent to cause confusion and trade on Plaintiff's goodwill and reputation.

102.    Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

103.    Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, a disgorgement of Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT II
## Federal False Designation of Origin and Unfair Competition against All Defendants

104.    Plaintiff adopts, repeats and realleges every allegation previously set forth in paragraphs 1-94 as if set forth in this paragraph.

105.    Defendants' unauthorized use in commerce of the Infringing Marks is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' products, and is likely to cause consumers to believe, contrary to fact, that Defendants' products are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by

Plaintiff.

106.     Defendants' unauthorized use in commerce of the Infringing Marks constitutes use of a false designation of origin and misleading description and representation of fact.

107.     Upon information and belief, Defendants' conduct is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff.

108.     Defendants' conduct is unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

109.     Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court, for which Plaintiff has no adequate remedy at law.

110.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, disgorgement of Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT III
## Common Law Trademark Infringement and
## Unfair Competition against All Defendants

111.    Plaintiff adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1-94 as if set forth in this paragraph.

112.    Defendants' conduct constitutes trademark infringement and unfair competition in violation of the common law of the State of Florida.

113.    This conduct by Defendants have allowed Defendants to wrongfully profit from, and has injured, Plaintiff in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

114.    Defendants' actions permit recovery of a disgorgement of Defendants' profits, damages, and costs by Plaintiff, including treble damages and Plaintiff's attorneys' fees.

115.    Defendants' conduct is malicious and wanton and Plaintiff is entitled to an award of punitive damages under Florida law.

## COUNT IV
## Florida's Deceptive and Unfair Trade Practices Act against All Defendants

116.    Plaintiff adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1-94 as if set forth in this paragraph.

117.    Defendants have been misleading consumers in Florida and are causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of their goods, and are otherwise damaging the public.

118.    Defendants' conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of the Florida Deceptive and Unfair Trade Practices Act, § 501.201 *et seq.*, Fla. Stat.

119.    Defendants' conduct has caused and is likely to continue to cause substantial injury to the public and to Plaintiff, entitling Plaintiff to injunctive relief and to recover damages, its costs and its reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Purple Innovation, LLC, prays this Court enter judgment against Defendants Waykar, Inc. and American Serleep Inc., and in favor of Plaintiff:

1.    Finding that Defendants' activities complained of herein are unlawful under Federal and Florida law;

2.    Granting an injunction permanently enjoining the Defendants, their employees, agents, officers, directors, managers, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities, from:

a.   importing, manufacturing, distributing, supplying, providing,
     selling, marketing, advertising, promoting, or authorizing any
     third party to import, manufacture, distribute, supply, provide,
     sell, market, advertise or promote products bearing the
     Infringing Marks or any other mark that is a counterfeit, copy,
     simulation, confusingly similar variation, or colorable imitation
     of Plaintiff's Asserted Marks;

b.   engaging in any activity that infringes Plaintiff's rights in its
     Asserted Marks;

c.   engaging in any activity constituting unfair competition with
     Plaintiff;

d.   making or displaying any statement, representation, or
     depiction that is likely to lead the public or the trade to believe
     that (i) Defendants' goods are in any manner approved,
     endorsed, licensed, sponsored, authorized, or franchised by or
     associated, affiliated, or otherwise connected with Plaintiff or;
     (ii) Plaintiff's goods are in any manner approved, endorsed,
     licensed, sponsored, authorized, or franchised by or associated,
     affiliated, or otherwise connected with Defendants;

e.   using or authorizing any third party to use in connection with

any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

f.    registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the Plaintiff's Asserted Marks, or any other mark that infringes or is likely to be confused with Plaintiff's Asserted Marks, or any goods of Plaintiff, or Plaintiff as their source; and

g.    aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (f).

3.    Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, supplied, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or constitute or are

connected with Plaintiff's goods.

4. Directing Defendants to instruct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States to immediately remove any products, packaging, labels, catalogs, containers, advertisements, signs, displays, and other materials that feature or bear the Infringing Marks, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Asserted Marks from public access and view.

5. Directing the Defendants to recall and deliver up for destruction or other disposition all goods, packaging, shopping bags, containers, advertisements, promotions, signs, displays, and related materials incorporating or bearing the Infringing Marks, or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of Plaintiff's Asserted Marks.

6. Directing Defendants, under Section 34(a) of the Lanham Act (15 U.S.C. § 1116(a)), to file with the court and serve upon Plaintiff's counsel within thirty (30) days after service on Defendants of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the

manner and form in which Defendants have complied therewith.

7. Awarding Plaintiff an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

8. Directing Defendants to account to and pay over to Plaintiff all profits realized by their wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

9. Awarding Plaintiff punitive and exemplary damages as the Court finds appropriate to deter any future willful infringement.

10. Declaring this is an exceptional case under Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

11. Awarding Plaintiff actual damages and any profits of Defendants attributable to the infringement.

12. Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

13. Awarding such other and further relief as the Court deems just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated:  November 27, 2025                    Respectfully submitted,

                                                      **SHUTTS & BOWEN LLP**

                                                      _/s/ Patricia M. Flanagan_
                                                      Patricia M. Flanagan
                                                      Florida Bar No. 58592
                                                      525 Okeechobee Boulevard
                                                      Suite 1100
                                                      West Palm Beach, Florida 33401

                                                      Jodi-Ann Tillman
                                                      Florida Bar No. 1022214
                                                      201 East Las Olas Blvd.
                                                      Suite 2200
                                                      Fort Lauderdale, Florida 33301

                                                      Camila Chediak
                                                      Florida Bar No. 1039625
                                                      200 South Biscayne Boulevard
                                                      Suite 4100
                                                      Miami, Florida 33131

                                                      _Counsel for Plaintiff_
                                                      _Purple Innovation, LLC_

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 27, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF which will send a notice of electronic filing to all counsel of record.

*/s/ Patricia M. Flanagan*
Patricia M. Flanagan